### WISDOM v. WISDOM et al. (two cases).
#### No. 6615.

Circuit Court of Appeals, Fifth Circuit.
March 2, 1933.

Rehearing Denied April 1, 1933.

Harry Holmes and E. R. Campbell, both of Houston, Tex., for B. H. Wisdom.

Roy C. Sewell, Walton D. Taylor, and W. J. Knight, all of Houston, Tex., for Belle Wisdom.

626

W. S. Hunt, of Houston, Tex., for appellee Houston Royalty Company.

J. L. Webb and K. C. Barkley, both of Houston, Tex., for appellee H. C. Cockburn.

Leon Sonfield, of Beaumont, Tex., and Meyer C. Wagner, of Houston, Tex., for appellee Brazo Oil Co.

Jno. C. Townes, Jr., of Houston, Tex., for appellee L. A. Layne.

Albert J. De Lange, of Houston, Tex., for appellee E. Cockrell.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

These are cross-appeals from a decree in equity settling debts and foreclosing securities held by Mrs. Belle Wisdom against B. H. Wisdom in which others holding title under B. H. Wisdom are concerned but do not appeal. Belle Wisdom is the aunt of B. H. Wisdom. The latter owned a tract of land in Brazoria county, Tex., containing 1,066 acres on which he had borrowed money secured by three trust deeds, one made to Tucker, one to Ferguson, and one to Summerfield. Belle Wisdom had taken up a number of judgments against him, and had loaned him other money. On December 26, 1916, he made her a warranty deed in fee simple to the land, the recited consideration being $8,943.60, "and the taking of the hereinafter described property subject to the following indebtedness," naming that secured by the three trust deeds. A year later he assigned to her his one-third interest in what is called the compensation contract, being oil royalties from certain other lands. She went into possession of these properties and received the income, also expending moneys in defending and improving them. She claimed to own them, but B. H. Wisdom claimed she was only trustee for him and sued her in 1921. He deeded to his lawyers, Vinson and Irish, a one twenty-fourth interest in the minerals in the 1,066 acres of land. While matters stood thus, the Ferguson trust deed, being the first lien, was foreclosing. There arose opportunity to lease 840 acres of the land to Southern Petroleum Company for oil development. The litigation between the Wisdoms was compromised by an elaborate deed of settlement, dated March 11, 1922, signed also by Vinson and Irish and duly recorded, which stated generally gave to Belle Wisdom a half interest in the land and a half interest for her life in B. H. Wisdom's part of the compensation contract, and gave B. H. Wisdom the remaining half interest in each, but out of his one-half interest in the land Vinson and Irish got a one forty-eighth mineral interest as royalty from the 840 acres leased to Southern Petroleum Company, and a one forty-eighth mineral interest in the remaining 226 acres. The Wisdoms on the same date made an oil lease on the 840 acres of land to Southern Petroleum Company which was signed also by Vinson and Irish, for which the lessee was to pay cash enough to retire the Ferguson trust debt of about $36,000, and also certain royalties. The Ferguson debt was paid and the deed was canceled from record on March 13th. Belle Wisdom took up the Summerfield trust debt of about $6,500. The Tucker deed securing a debt of about $35,000 was taken up also by Southern Petroleum Company, and a release of it recorded March 25th, but the debt was renewed in five promissory notes of B. H. Wisdom due in five years and secured by a trust deed from Belle Wisdom and B. H. Wisdom to Fox, as trustee, covering the 840 acres leased land. The notes and deed bear date March 11th, but the deed was recorded March 27th. The construction and operation of the settlement deed, the oil lease, and the Fox trust deed, all dated March 11, 1922, make the chief problem in the case. In December, 1922, while holding the five notes of B. H. Wisdom secured by the Fox deed, Southern Petroleum Company conveyed all its leases, leasehold estates, and real estate, including the leasehold interest in the Wisdom land particularly described, to a trustee, Clarke, to secure a series of notes it was then making. On March 24, 1923, it for value assigned the five Wisdom notes with the Fox lien securing them, and they came later into the hands of Houston National Bank by an assignment recorded May 20, 1926. In December, 1926, the leasehold of Southern Petroleum Company was sold out on foreclosure by Clarke, trustee, to Brazo Oil Company, and is now held by transferees from that company. On March 8, 1927, Belle Wisdom paid Houston National Bank $47,394, the full amount due on the five Wisdom notes, and had them indorsed to her without recourse. On July 28, 1930, she filed this bill to collect these notes, the Summerfield debt which she had taken up, and the amounts due her for advances in managing the property. The decree was generally in her favor, except that she was given no lien on the leasehold interests held under Southern Petroleum Company nor on the royalty interests in the leased land held under Vinson and Irish, and was given judg-

ment for only half the sum due on the five notes of B. H. Wisdom, to all of which she excepts. B. H. Wisdom complains that she was not charged with her half of the royalties received under the compensation contract amounting to about $8,000, and contends that a limitation of two years should have barred her recovery against him as for contribution.

■ The deed of settlement, the oil lease, and the Fox trust deed, though dated and signed the same day, cannot be construed together as a single instrument, for they are not between the same parties, and each was seeking to express the rights and obligations peculiar to itself. But they were executed in view of one another, and are so related as to warrant consideration of the clear agreements in one as part of the circumstances surrounding the making of another to throw light on what may be obscure in that other. Nor can they be considered as strictly contemporaneous, because they were not intended so to operate. Barber v. Herring (Tex. Com. App.) 229 S. W. 472; Whitehurst v. Boyd, 8 Ala. 375; Newall v. Wright, 3 Mass. 138, 3 Am. Dec. 98. There is no testimony as to which was actually delivered first, but we think the deed of settlement is to be treated as first operative, such being the intention of all parties. Assuredly peace amongst the owners would be a prerequisite to making the new joint lease. The division of royalties and taxes provided in the lease could not have been fixed except upon the basis of ownership established in the settlement. Although the Fox deed is referred to in the settlement as "this day executed," the notes which it was to secure were not yet of force, for their consideration was to be the payment by the Southern Petroleum Company of the indebtedness secured by the Tucker deed, which indebtedness is recited to be still held by St. Mary. The lease is operative next after the settlement deed; its royalties being divided according to the interests of the parties as fixed in the settlement. The St. Mary debt secured by the Tucker deed is elaborately referred to along with that secured by the Summerfield deed, and it is agreed that any party to the lease may take up either and be subrogated thereto. There is no reference to the Fox deed and the five notes secured by it as in existence. The understanding outside of the writings was that Belle Wisdom should take care of the Summerfield debt, and that Southern Petroleum Company should take care of the Tucker debt, and they each did so. Apparently the Tucker debt was not actually paid until March 25th, for on that day the Tucker deed was released of record and the Fox deed recorded on March 27th. The Fox deed makes no reference to the settlement, but refers to the lease as in operation, and directs the application of one-half of the royalties under it to the Wisdom notes, and recites that the notes it secures represent a debt that *was* owned by St. Mary and secured by the Tucker deed "at the time of the payment thereof by" the Southern Petroleum Company. Looking to these references in the several instruments to one another we think the intended order of their operation is first the settlement deed, second the lease, and third the Fox deed.

■ Was the Fox deed a lien on the leasehold rights of Southern Petroleum Company? An oil and gas lease in Texas conveys title to the minerals in place less the reserved royalties. Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S. W. 290, 29 A. L. R. 566; Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.(2d) 27. Southern Petroleum Company paid in cash $36,000 for this lease, beside the like amount which it invested in the debt secured by the Tucker deed. The Wisdoms could not be supposed to be again conveying to Fox to secure a debt of Wisdom the same minerals which had just been conveyed by lease to Southern Petroleum Company; nor would Southern Petroleum Company be likely to take security on its own property. The words of conveyance used in the Fox deed do not require this extraordinary construction. They are: "The parties of the first part do sell and convey 'a tract of 840 acres of land, more or less, out of the A. Darst League survey (describing it) together with any and all royalties accruing from any oil, gas, sulphur or other minerals in or under said lands, including any *royalties* accruing to B. H. Wisdom and Mrs. Belle Wisdom, or either of them, *under a certain oil and mineral lease* this day executed by them to Southern Petroleum Company upon the above described lands.'" While the conveyance of the lands would ordinarily include the minerals under them if they had not been previously conveyed, the reference to the lease as existing and the conveyance of the royalties which are to arise from the operation of the lease and as part consideration for it plainly establish that the minerals already conveyed by the lease are intended to be excluded from the deed. We therefore hold that Fox as trustee has no title to or lien on them to secure the B. H. Wisdom notes

taken up by Belle Wisdom, but that the title to them is in the grantees thereof from the Southern Petroleum Company.

■ Nor do we think the royalty interests established in Vinson and Irish by the settlement deed and by the lease passed as security under the Fox deed. Since everything was originally subject to the Tucker deed, these interests might reasonably have been required to come under the Fox deed, and the language of the Fox deed, "Any and all royalties," is broad enough to cover them; but in the specific reference to the lease of the Southern Petroleum Company are mentioned only the royalties accruing to B. H. Wisdom and Mrs. Belle Wisdom, and, since Vinson and Irish did not join in the Fox conveyance, their interests are not to be considered bound thereby.

■ But Mrs. Wisdom says that she is subrogated to the lien of the Tucker deed through Southern Petroleum Company, and thereby entitled to enforce its lien both on the royalties of Vinson and Irish and on the leasehold of Southern Petroleum Company, by reason of the covenants in the three instruments signed March 11, 1922. In the settlement contract signed by the Wisdoms and Vinson and Irish the stipulation is: "Any party or parties to this instrument who may pay off any lien or encumbrance now existing upon said lands included in this contract shall be subrogated to the rights of holder of such lien or encumbrance so paid off." The lease signed by all parties similarly provides that any party to it may take up the debts secured by the Tucker or Summerfield deed and be subrogated to its lien. Mrs. Wisdom took up the Summerfield debt, and Southern Petroleum Company took up the Tucker debt, and each was subrogated as agreed. Had matters so stood, Southern Petroleum Company could have passed its rights by subrogation on to Mrs. Wisdom when she in turn bought the debt. But Southern Petroleum Company accepted the new notes and the Fox deed, and the Tucker deed was formally released on March 25th and the release recorded. We think this affirmative action by Southern Petroleum Company ended the lien of the Tucker deed. Southern Petroleum Company no doubt desired to clear the title to its leasehold, which it soon after deeded with full warranty as security to Clarke, trustee. By estoppel as well as by the cancellation of the Tucker deed Southern Petroleum Company lost its lien on the leasehold so conveyed. The Fox deed also states that Southern Petroleum Company is subrogated to the

lien of the Tucker deed, but, as just stated, the subrogation which did at first exist was destroyed by the canceling from record of the Tucker deed and as against the leasehold in the minerals by conveying it away to Clarke, trustee, with general warranty. The subsequent transferees of the Wisdom notes, including Mrs. Wisdom, therefore acquired them secured only by the Fox deed without aid from the Tucker lien which Southern Petroleum Company had destroyed.

■ We think, however, that, as between Vinson and Irish and their privies on the one hand and Mrs. Wisdom on the other, there is an enforceable covenant in the recorded settlement deed which subjects some of the Vinson and Irish royalties in the lands, though not covered by the Fox deed, along with the interests held by Belle Wisdom and B. H. Wisdom to the payment both of the Tucker debt and the Summerfield debt. . It reads: "The said royalty interests herein given to said W. A. Vinson and G. H. Irish shall be subject to the said indebtedness secured by the said deed of trust executed by the said B. H. Wisdom to A. S. Tucker, trustee, and to all extensions and renewals thereof, including the deed of trust this day executed by B. H. Wisdom to H. S. Fox, Jr., trustee * * * and to the lien and indebtedness created and secured by deed of trust to John Summerfield, trustee, but with the foregoing exceptions the said royalty interests herein granted to said Vinson and Irish shall be free from and not subject to the liens herein granted and given to said Mrs. Belle Wisdom." In accordance with this consent these royalties should have been subjected to the claims of Mrs. Wisdom under the Fox and Summerfield deeds, but to no other.

It is difficult to determine whether the expression "the royalty interests herein given to Vinson and Irish" refers only to those mentioned in the subparagraph quoted from, or extends also to those fixed in the leased 840 acres in another paragraph, in which paragraph no words of gift or grant are used. Since the words of subjection quoted are a part of the same sentence in which the gift and grant of royalties outside of the leased land is made, we think the subjection must be held to extend to those royalties alone.

■ In the decree appealed from Mrs. Wisdom is treated as a creditor entitled to collect in full for the Summerfield debt and for the excess of her advances over receipts in managing the property, but is allowed to recover only one-half of the amount due on the five B. H. Wisdom notes, including attorney's

fees promised in them, and with a lien only on his interest in the properties therefor. We think she is equally a creditor as to all. She does not owe the B. H. Wisdom notes, but he alone does. Leaving aside the compensation contract for the present, and considering only the land, she is to have a half interest in the land and the lease thereon, but subject to the payment of the Fox and Summerfield debts and her own lien for advances. Her interest, along with the other interests liable, constitute the primary fund for discharging the debts after failure of the royalties to pay them when applied as agreed prior to the maturity of the notes. If the primary fund on foreclosure should fail to pay them, B. H. Wisdom is still indebted for the balance on his notes. No one has assumed any part of them. Mrs. Belle Wisdom is not seeking a contribution from persons bound with her, as was the case in Apple v. Owens (C. C. A.) 48 F.(2d) 807. She is not even asking equity for a subrogation on the ground that she has been compelled to pay for her protection a claim which the holder would not sell to her. She had bought, three days before due, a secured debt against B. H. Wisdom which has been duly and legally indorsed to her. That she is interested in some of the property securing it does not change the fact of her legal ownership of the debt. She is entitled to a judgment for its full amount with attorney's fees against B. H. Wisdom, and a foreclosure against all the property securing it including her own, and, if the sum realized from the security proves insufficient to pay it, she can hold the deficiency against B. H. Wisdom. She is likewise entitled to a judgment for the Summerfield debt, and foreclosure against its securities. Her claim for the balance of her advances should have separate judgment, because the Vinson and Irish royalties are not subject to that. Her recoveries in each instance rest on writings. The two-year limitation has no application.

 We are thus brought to the question of the amount due her for these advances. The Summerfield debt was included in the balance fixed by the settlement of $14,842.92. In the bookkeeping since, Mrs. Wisdom has not charged herself and credited B. H. Wisdom with the rents and royalties received from her half of the B. H. Wisdom third of the compensation contract, treating it as a thing apart from the other business. We think she is wrong in so doing. She did acquire her assignment of the compensation contract by a separate instrument a year after her deed to the land. The deed to the land recites a

monetary consideration. The consideration for the assignment does not appear. In the brief statement in the record of the contentions made in the suit that was compromised, it is said that Mrs. Wisdom was only claiming that the compensation contract was conveyed to her for the purpose of litigating some matters with reference to it. She does not testify to any other consideration, and refers to a litigation concerning that contract as still pending at the time of the compromise. B. H. Wisdom testifies that there was no valuable consideration for the assignment. There seems, therefore, no reason why she should have a more favored position about the interest in the compensation contract which cost her nothing than about the interest·in the land, and much reason to suppose that both properties were put into the settlement on the general idea of having them pay out the debts against B. H. Wisdom in five years under Mrs. Wisdom's management, and of then sharing with her what was saved on the terms fixed. The language of the settlement favors the view that all income from any source not otherwise appropriated was to go to the reduction of the debts due her during the five-year period, and then all the property dealt with in the settlement was to be liable so far as necessary to pay her balance. Her lien is declared in these words with italics added: "Said sum, together with all interest to become due thereon, as well as all other ·sums which may become due hereunder, shall be secured by a lien and charge here given, granted, fixed and established upon *all* of said lands * * * with *all* rents, revenues and royalties due to said Mrs. Belle Wisdom and B. H. Wisdom * * * also upon *the one-third interest originally owned* by said B. H. Wisdom in and to the compensation contract * * * and *all* rents, revenues and income due or to become due thereunder." She is then empowered: "To collect *all* rents, revenues. and income from *all* of said lands, leases, *interest in said compensation contract* * * * until she shall receive or be paid in full." If payment is not thus made in sixty-six months: "She may then proceed to foreclose the lien herein and here and now granted to her upon *all* the said lands, *compensation contract,* leases, etc., and collect all of said indebtedness." It is the whole third interest, and not B. H. Wisdom's half thereof, that is thus put under the lien, together with the income therefrom. As to this debt also Mrs. Wisdom stands as a creditor with security in which she is interested. She must apply the whole income to her debt as agreed,

and for the balance must foreclose upon all interests alike.

The decree not being in all respects in accord with the conclusions herein expressed, we reverse it, and remand the cause for further proceedings not inconsistent herewith.