W. T. WAGGONER ESTATE v. SIGLER OIL COMPANY.

No. 4523. Decided June 28, 1929.
(19 S. W., 2d Series, 27.)

*Berry, Stokes & Killough, F. B. Walker,* and *Thompson, Bar-wise & Wharton,* for plaintiff in error.

On the jury's findings of fact and the undisputed evidence in this record, the W. T. Waggoner Estate was entitled to a decree rescinding the lease as to the undeveloped part of the land, and removing it as a cloud on the title on that land, because the determinable fee vested by the lease had ended because of the failure and refusal of the Sigler Oil Company to give reasonable development. Grubb v. McAfee, 109 Texas, 527; Texas Co. v. Davis, 113 Texas, 32; Stephens Co. v. Mid-Kansas O. & G. Co., 113 Texas, 290, 29 A. L. R., 566; Humphreys-Mexia Co. v. Gammon, 113 Texas, 247, 29 A. L. R., 607; Robinson v. Jacobs, 113 Texas, 231; Munsey v. Marnet Oil & Gas Co., 113 Texas, 212; Thomason v. Ham, 113 Texas, 239; Mills & Willingham, Law of Oil & Gas, 166, 167; Merrill, Covenants Implied in Oil & Gas Leases, 20; Parish Fork Oil Co. v. Bridgewater Gas Co., 42 S. E., 655.

The foregoing cases decided by the Supreme Court of Texas, unquestionably establish, we submit, the following four propositions, namely:

1. The estate conveyed *might* endure forever; on the other hand, it might *not.*

2. Both lessor and lessee *intended* the land to be used for *no* purpose or use *other* than carrying on *two* distinct lines of activity; namely (1) *exploration* for oil and gas, and (2) production of either, or both, of said minerals, when found.

3. The estate conveyed by the lease was to endure only *while,* and so long as, the aforesaid use continued (which was a combination of the union of the two activities named, to-wit, exploration and production), and on cessation of such use (made up of said two combined activities—exploration and production) the estate terminated instantly, without action by the lessor. This term was implied.

4. Said implied term, calling for a termination of the lease upon cessation of the use for which the lease was executed, to-wit, exploration and production, constituted a *limitation* of the estate conveyed.

*Bullington, Boone, Humphrey & King, Charles L. Black, Cecil Storey, Kennerly, Williams, Lee, Hill & Sears,* and *H. O. Head,* for defendant in error.

The requirement of reasonable diligence in additional development, after oil is discovered and while it is still being produced from the leased premises, is a mere *covenant* to be performed by the lessee, and is not a *limitation* debasing the fee created by the lease and upon which the duration of the lease depends. Illustrating the use of "for the sole and only purpose," in creating a determinable fee, we cite: Slegel v. Lauer, 148 Pa. St., 236; Scheetz v. Fitzwater, 5 Pa. St., 126; Jones on Real Estate and Conveyancing, Vol. 1, Sec. 629; Corpus Juris, Vol. 21, pp. 922–923. Illustrating the use of "as long as" or "so long as," in stating a limitation creating a determinable fee, we cite: State v. Brown, 27 N. J. L., 20; Henderson v. Hunter, 59 Pa., 335; Jamaica Pond Corporation v. Chandler, 9 Allen, 159–168; Stillwell v. Melrose, 15 Hun, 378; First Universalists Society v. Boland, 155 Mass., 171; Jones on Conveyancing, Vol. 1, sec. 628; Thompson on Real Property, Vol. 3, sec. 2105; Tiffany on Real Property, 2nd Edition, Vol. 1, p. 334.

For a failure to use the property "for the sole and only purpose of mining" and the failure to produce oil "from said land" the title instantly reverts under the self-operative words of the grant, without the consideration or adjustment of any equities. Texas Company v. Davis, supra. And the remedies available in such a case

are those familiar remedies which are available to any owner of an estate in land—an action to recover the land or to remove cloud from title, etc.

For a breach of the obligations of the contract, a forfeiture of the *estate* as for breach of a condition subsequent may be declared by the lessor where the particular obligation is, under the terms of the lease, a condition subsequent. Where this is true, the lessor may declare the forfeiture and re-enter, thus terminating the estate of the lessee. In this connection, it must be remembered that a so-called "forfeiture" for breach of a condition subsequent in a grant is declared by the grantor and not by the court, and the declaration of the grantor, followed by re-entry or claim, reinvests the title—assuming that the required facts exist—and the court acts only in recognition of the forfeiture, and not to declare it.

For breach of those covenants of the mining contract which, by the terms of the lease, are not made conditions subsequent (breach of which will terminate the estate at the election of the grantor), the lessor is not without effective equitable remedy in cases where his legal remedies are inadequate.

"Words of limitation" must be certain in their meaning. A Court and the parties must be able, looking at the instrument, to say in advance what acts or things will end the title, and must be able to certainly determine when the title has actually ended and what has ended it. It results that a limitation making the duration of a determinable fee depend upon "reasonable diligence" in the use of property for a certain purpose is too general and indefinite in meaning. It is void as a *limitation*. Jacob's Law Dictionary; Tomlin's Law Dictionary; Benavides v. Hunt, 79 Texas, 383–392; Decker v. Kirlicks, 110 Texas, 90–94; Clavering v. Ellison, 7 H. of L., 707; Fillingham v. Bromley, Turner & R., 530, 37 English Reprint, 1204:

Not only must the limitation be definite in meaning, but the "words of limitation" must appear in the grant. Union Canal Co. v. Young, 1 Wharton, 410; Corpus Juris, 923; Carter v. Branson, 79 Ind., 14; Noyes v. St. Louis, etc., Ry. Co., 31 N. E., 487; Sumner v. Darnell, 27 N. E., 162; Elkhart Can Works v. Ellis, 15 N. E., 249.

Here the limitation expressly stated is that the estate SHALL remain in force "as long as oil or gas is produced from said land by the lessee." With this plain, express limitation appearing in the lease, there can be no implied limitation that said estate shall NOT

remain in force "as long as oil or gas is produced from said land by the lessee."

For breach of the implied covenant requiring diligence in development, the estate of the lessee—the determinable fee—does not end *under its limitations*. This is because its duration does not depend upon the existence of any such limitation.

For breach of such implied covenant, the lessor may not declare a forfeiture and re-enter as for breach of a condition subsequent, thereby divesting the title of the lessee. This is because the lease contains no such condition subsequent. This point was distinctly ruled in Grubb v. McAfee and the holding of that case is in line with the overwhelming weight of authority. A few decisions apparently in conflict with its holding are in main not in conflict because, when they speak of a forfeiture of the lease, they in fact refer to a judicial "forfeiture," that is, to a judicial cancellation of the lease.

For material breach of the implied covenant requiring diligence in development the lessor is not without adequate remedy. His remedy is the recovery of damages, where that is adequate and effective. Where this legal remedy is inadequate and where there is no other remedy effective to enforce the obligations of the contract, the lessor, for material breach of the covenant, may maintain a suit to obtain a judicial cancellation of the lease (sometimes referred to as a "forfeiture" of the lease.) This cancellation is awarded, not because the estate—the determinable fee—has ended under its limitations, or because the determinable fee has terminated by declaration of the lessor for breach of a condition subsequent. The cancellation is awarded because there has been a material breach of an essential covenant of the mining contract and because the justice of the case requires that the lessor have some remedy, and there is no other remedy available. Howerton v. Kansas, 82 Kan., 367, 108 Pac., 813; Day v. Kansas City Pipe Line Co., 87 Kan., 617, 125 Pac., 43; Alford v. Dennis, 102 Kan., 403, 170 Pac., 1005; Brown v. Union Oil Co., 114 Kan., 166, 217 Pac., 286; Blackwell Oil Co. v. Whitesides (Okla.) 174 Pac., 573; Scott v. Price, 247 Pac., 103.

The general rule is that the equitable relief of cancellation or rescission will not be granted for mere breach of contract. Corpus Juris, Vol. 9, p. 1181. But there are many and important exceptions to this general rule. Corpus Juris, Vol. 9, p. 1182; Anderson v. Hammon, 24 Pac., 228; Black on Rescission and Cancellation,

Vol. 1, sec. 212; 6 Page on Contracts, secs. 3409, 3418; Grubb v. McAfee, 109 Texas, 531; Coffinburg v. Sun Oil Co., 67 N. E., 1069.

*Williams, Neethe & Williams,* and *A. H. Carrigan, A. H. Britain, J. T. Montgomery, S. A. L. Morgan, Bert King,* and *Wm. N. Bonner* also filed briefs and argument as *amici curiae* in support of the positions of defendant in error.

MR. JUSTICE GREENWOOD delivered the opinion of the court.

Plaintiff in error, the W. T. Waggoner Estate, brought this suit against defendant in error, Sigler Oil Company, to forfeit or cancel a conveyance of oil and gas in a certain 3000 acres of land in Wilbarger County.

On January 27th, 1919, W. T. Waggoner and others, by a writing duly executed, for a consideration of $100,000 and stated covenants and agreements, leased 85,000 acres of land in the counties of Wilbarger and Baylor, including said 3000 acres tract to W. G. Burton, "for the sole and only purpose of mining and operating for oil and gas, and of laying pipe lines and of building tanks, power stations and structures thereon to produce, save and take care of said products." The writing called a lease, stipulated for an annual rental of $100,000, payable in advance on the 27th day of each January during the life of the lease, "provided each producing well shall hold 2000 acres in a square, said well to be the center, and said 2000 acres shall be released as to further annual rental." It was expressly provided that the lease should remain in force for a term of five years from date and as long thereafter as oil or gas or either of them was produced from the land by the lessee; and, it was further provided that if no well was commenced on the land on or before the first day of June, 1919, the lease should terminate as to both parties, reasonable time being allowed for unavoidable delays. The lessors were to receive the equal one-eighth part of all oil and gas produced and saved from the leased premises. The estate of either party under the contract was declared to be assignable in whole or in part, and the assignee of the lessee as to only a part of the leased lands was to continue payments of no more than his proportionate part of rentals. Defendant in error, Sigler Oil Company, had acquired all rights under this writing formerly held by Burton in the 3000 acres of land, and plaintiff in error, the W. T. Waggoner Estate, had likewise succeeded to the rights of the lessors in the 85,000 acres.

Plaintiff in error instituted this suit January 29, 1924, averring that the Sigler Oil Company had lost all rights and interests in and to the oil and gas in the 3000 acres: (1) by abandonment of such rights and interests, (2) by failure and refusal to use the 3000 acres for the purposes of the lease, and (3) by failure and refusal to proceed with reasonable diligence in the performance of the company's obligations to explore and develop and market the oil and gas.

Defendant in error, Sigler Oil Company, answered by pleading a general denial and specially that it had fully performed its obligations by drilling certain wells for oil and gas, including two wells which produced oil in paying quantities and from which plaintiff in error had received and was receiving royalties, and that defendant in error was entitled, in any event, to hold its rights in the oil and gas in 2000 acres, with a producing well at its centre.

Answering special issues, the jury found: first, that the Sigler Oil Company and its predecessors in title prior to January 29, 1924, failed to use reasonable diligence in the development for oil of the 3000 acres of land; second, that the Sigler Oil Company, prior to January 29, 1924, breached its duty to carry out the essential purposes of the lease through reasonable development of the land; and, third, that the Sigler Oil Company did not, prior to January 29, 1924, abandon its duty of carrying out the essential purposes of the lease.

On these findings the District Court refused to cancel the lease, but decreed a kind of limited specific performance, requiring the drilling of not less than eight wells, at the rate of one each six months, and adjudged that failure to comply with the decree should result in the forfeiture of the lease.

The Court of Civil Appeals construed the stipulation for each producing well to hold 2000 acres without payment of future rentals as discharging the lessee, or his assigns, from any further obligation for mineral exploration or development of each 2000 acres containing a producing well at its centre, brought in by the lessee or his assigns, at least for the fixed term of five years. The Court of Civil Appeals decided that in the absence of abandonment of its rights by the Sigler Oil Company, plaintiff in error had no remedy for any breach of duty to reasonably explore and develop the oil and gas other than an action for damages or for specific performance. Accordingly, the Court of Civil Appeals reversed the judgment of the District Court, and remanded the cause for a new trial. 276 S. W. 936.

The Commission of Appeals concluded that on the jury's findings the judgment of the District Court and of the Court of Civil Appeals should both be reversed and that judgment should be rendered for plaintiff in error, divesting the Sigler Oil Company of all interests in the 3000 acres, save as to ten acres including the two producing wells. The conclusion that the Sigler Oil Company be allowed to hold the ten acres was grounded on a concession in plaintiff in error's pleadings. The Supreme Court entered a judgment in line with the Commission's conclusions. This judgment followed the Commission's interpretation of previous opinions of the Court as holding that a lessee's failure to prosecute with reasonable diligence the essential purposes of a contract for the production of oil and gas terminated the lessee's title, aside from his intent to abandon his contract or rights. 284 S. W. 920, 926. On motion for rehearing, the case was withdrawn from the Commission and has been argued by eminent counsel.

The following propositions must be regarded as settled by repeated decisions of the Supreme Court:

First: Such a writing as that here called a lease operated to invest the party called lessee and his assigns with title to oil and gas in place. Texas Company v. Daugherty, 107 Texas, 226; Stephens County v. Mid-Kansas Oil & Gas Company, 113 Texas, 160; Humphreys-Mexia Company v. Gammon, 113 Texas, 255.

Second: The estate acquired by the so-called lessee and his assigns was a determinable fee, which was lost on cessation of the use of the land for purposes of oil and gas exploration, development, and production. Stephens County v. Mid-Kansas Oil & Gas Company, 113 Texas, 173; Texas Company v. Davis, 113 Texas, 331; Munsey v. Marnet Oil & Gas Company, 113 Texas, 220; Robinson v. Jacobs, 113 Texas, 239; Thomason v. Ham, 113 Texas, 246.

Third: The estate of the lessee or of his assigns did not survive abandonment. Grubb v. McAfee, 109 Texas, 530; Munsey v. Marnet Oil & Gas Co., 113 Texas, 219; Thomason v. Ham, 113 Texas, 246.

Fourth: Where a mining lease provided for oil or gas royalties and failed to define the lessee's duty as regards development after discovery of paying oil or gas, the law implied the obligation from the lessee to continue the development and production of oil or gas with reasonable diligence. Benavides v. Hunt, 79 Texas, 396; Grubb v. McAfee, 109 Texas, 530, 531; Texas Pac. Coal & Oil Company v. Barker, 117 Texas, 418, 6 S. W. (2d) 1035, 1036;

Freeport Sulphur Company v. American Sulphur Royalty Company, 117 Texas, 439, 6 S. W. (2d) 1042, 1043.

Fifth: Breach of the lessee's implied obligation for reasonable mineral operation will not authorize the forfeiture of the lease as for breach of condition subsequent, such obligation being a covenant. Grubb v. McAfee, 109 Texas, 530; Texas Company v. Davis, 113 Texas, 335.

Sixth: The usual remedy for breach of the lessee's implied covenant for reasonable development of oil and gas is an action for damages, though under extraordinary circumstances—where there can be no other adequate relief—a court of equity will entertain an action to cancel the lease in whole or in part. Texas Pac. Coal & Oil Company v. Barker, 117 Texas, 418, 6 S. W. (2d) 1035; Freeport Sulphur Company v. American Sulphur Royalty Company, 117 Texas, 439, 6 S. W. (2d) 1045; Grubb v. McAfee, 109 Texas, 534, 535.

Analyzing and applying the principles underlying the foregoing propositions and decisions, we are satisfied that notwithstanding the stipulation that each producing well brought in under the lease on the 85,000 acres should hold 2000 acres in a square without payment of future rentals, still the Sigler Oil Company, as the assignee of the original lessee, was under an implied obligation, after the drilling of the two paying wells, to continue with reasonable diligence, during the five year term as well as thereafter, the work of exploration for, and production of, the oil and gas in the 3000 acres.

Mr. Summers shows by authorities cited that the rule is almost universally accepted which he states as follows:

"In absence of express stipulation creating a duty to proceed with drilling after the discovery of oil and gas in paying quantities, the law, to accomplish the manifest intention of the parties, in leases where the principal consideration is royalties to be paid the lessee, implies a duty on the part of the lessee to reasonably develop the premises." Summers Oil & Gas, sec. 129, page 414, and note (48)."

After the producing wells were brought in by the Sigler Oil Company no revenue whatever was to be derived from the lease of the land thereby released from rentals save through royalties.

Discussing the covenant for additional wells where the first well is a producer, Mr. Merrill says:

"It has been argued with vigor and ability that, after production is secured from the exploratory well, there should be no implied

covenant for further development, other than that necessary for protection of the leased premises against drainage. The basis of this argument is that, the lessor receiving some income from the lease, the presupposition of development and payment of royalties is satisfied and further development should be left to the will of the lessee. It is submitted, with all due respect, that this is unsound. The presupposition is not satisfied by the payment of royalties from one small well if the land is clearly capable of further profitable development. The lessor assuming the presupposition for development, may justifiably claim to have his land fully developed and to realize all the royalties it is capable of producing, in the absence of an agreement to the contrary." Merrill's Covenants Implied in Oil & Gas Leases, section 117, p. 279.

Quite enough was said in the opinions in the cases of Grubb v. McAfee and Texas Company v. Davis, supra, to demonstrate that we would do violence to what all parties plainly intended should we interpret this lease in such manner as to absolve the lessee or his assigns from the duty of reasonable development after proving that the 3000 acres contained oil in paying quantities.

Was the implied obligation for further reasonable development, while the 3000 acres was producing oil from two wells, a limitation on the estate granted? Tentative Draft No. 1 of the Restatement of the Law of Property by the American Law Institute, page 48, lines 12 to 16, uses the word "limitation" as meaning "a phrase or a number of phrases in a conveyance which delimit the duration of an interest in land."

The only clauses in the writing before us which could delimit the duration of the interests granted are as follows:

First: The clause providing for the termination of the lease as to both parties unless a well was commenced on the land, on or before June 1, 1919;

Second: The clause demising and leasing the land for the sole and only purpose of mining and operating for and producing oil and gas, and saving them for market.

Third: The clause stipulating that the lease should remain in force for a term of five years from date, on payment of annual rentals, and as much longer as oil or gas was produced from the land by the lessee or his assigns.

A clause similar to the first was referred to in a dictum in Texas Company v. Davis, 113 Texas, 331, as creating a condition subsequent, that effect having been ascribed to it by distinguished counsel on both sides and by the learned judges writing the majority

and minority opinions in the Court of Civil Appeals. This may have arisen from failure to recognize a distinction between the customary "drill or pay" clause and the "unless" clause. The clauses under consideration in the Davis case and here come within the class of "unless" clauses. The correct rule seems to be that while the usual "drill or pay" clause in an oil lease does introduce a condition subsequent, for the benefit of the lessor alone, yet, as said by Mr. Summers, "Where the 'unless' drilling clause is used a failure of the lessee to drill or pay a stipulated sum of money *ipso facto* terminates the lease, without the necessity of re-entry, action or their equivalents by the lessor. For this reason the interest created in the lessee by such lease cannot be one terminable by breach of condition subsequent. Some courts have designated them options or optional leases, but the interests created by them are perhaps better classified as estates upon common law limitation, wherein the interests in the grantee or lessee continue until the happening of the event upon which they terminate." Summers Oil and Gas, pages 483, 506 to 512.

However, we need not further consider this first limitation clause, because it was admittedly complied with by the commencement of an oil well on the land before June 1, 1919.

The words of the second and third clauses of limitation above mentioned not only fail to make the duration of the granted estate depend *on the degree of diligence* used in the continued exploration, development and production of oil and gas on the land, after their discovery, but such words expressly negative the termination of the lessee's interests as long as either oil or gas was actually being produced from the leased land. The express provision of the third clause is that the lease shall remain in force, i. e., shall *not* terminate, *as long as* either oil or gas is produced from the land by the lessee. We are asked to say, by judicial interpretation, that the lease shall terminate *before* the cessation of production of oil or gas from the land by the lessee, if, by reasonable diligence, more oil or gas could have been found, produced or marketed. A court should never override by implication the intention of parties expressed in a binding writing. Freeport Sulphur Company v. American Sulphur Royalty Company, 117 Texas, 439, 6 S. W. (2d) 1043 (4).

Even if the third clause did not forbid treating the measure of diligence imposed by the implied obligation for further mineral operation, as a limitation on the estate granted, we think it is more consonant with the intention of the parties not to regard the second

clause as embodying in its limitation the requirement of reasonable diligence in the performance of the obligations resting on the lessee for mineral exploration, development and production.

In a case in which this Court undertook with great care to define the interests acquired by a lessee under a similar lease it was said that, "the grant was to be enjoyed only while the work of mineral exploration and production was carried on"; and that the estate granted instantly terminated when the lessee *no longer* prosecuted such work. In that case, the estate granted was adjudged terminated because "the evidence is undisputed which conclusively shows that those under whom defendants in error claim (i. e., the lessee and his assigns) *entirely and permanently* stopped and abandoned the exploration and development of the 76½ acres and the production of minerals thereon." Texas Company v. Davis, 113 Texas, 331, 333, 335.

In an opinion delivered the same day the Davis case was decided, the Court again said: "It was intended by all parties that the lands should be used for no other purpose than the specified mineral exploration and production, and that the grants were to be enjoyed only while such use continued and were to immediately terminate on *cessation* of the use." Continuing, the Court quoted from both Kent and Tiffany in support of the proposition that it was *cessation* of the use for the purposes for which the grant was made, which would terminate a grant, under a clause like the second now under consideration. Stephens County v. Mid-Kansas Oil & Gas Company, 113 Texas, 173.

In Munsey v. Marnet Oil & Gas Company, 113 Texas, 219, the Court declared:

"In our opinion, both contracts or grants passed title to corporeal property—not absolutely—but for mining purposes only, and title of such nature as to be incapable of enduring after abandonment of the contracts or abandonment of operations for mineral discovery and production."

In Robison v. Jacobs, 113 Texas, 239, it was held that the pleadings and evidence raised the issue of "termination of plaintiff in error's title and rights, through *cessation* of use for the purpose of the grant, whether or not defendant in error should prevail on the issue of abandonment."

The Court ought not to conclude that the parties intended to prescribe a test for termination of the interests granted which could only be applied with the utmost uncertainty or confusion. Yet,

if reasonable diligence in performing every one of the lessee's exploring, developing, producing, and marketing operations was the test, neither lessor nor lessee could at any time have clearly or certainly known whether the estate granted was alive or ended. Such a test must inevitably diminish—if not destroy—the value of the rights of all parties derived from a mineral lease.

Considerations like the above have induced the courts to very uniformly refuse to regard obligations lacking in definiteness and certainty as introducing into grants conditions subsequent or limitations leading to forfeiture or termination of vested estates.

The Court declared, through Chief Justice Stayton, in Benavides v. Hunt, 79 Texas, 392:

"It is further insisted that the part of the tenth paragraph which obligated appellees 'to use all economy in the conduct and management of said mining enterprise' gave another condition on noncompliance with which appellants were entitled to terminate the estate.

"We are of opinion that this proposition can not be sustained, and if for no other reason because what would be deemed the 'use of all economy' would be too uncertain to recognize as a condition on which a forfeiture might rest.

"It would vary as much as the opinions of witnesses might vary on a matter of fact about which no fixed rule determines compliance or noncompliance. Right to forfeit estates vested can not exist by reason of the existence or nonexistence of a state of facts not clearly defined."

More recently, the rule declared by Judge Stayton was re-affirmed, when the Court said:

"The authority to forfeit a vested right or estate should not rest in provisions whose meaning is uncertain and obscure. It should be found only in language which is plain and clear—whose unequivocal character may render its exercise fair and rightful." Decker v. Kirlicks, 110 Texas, 94.

In Grubb v. McAfee, 109 Texas, 532, approved in Davis v. Texas Company, 113 Texas, 335, the Court refused to hold that the implied obligation for continued development in the ordinary oil lease was a condition subsequent, quoting from the opinion of Justice Bonner in Johnson v. Gurley, 52 Texas, 227. In the latter opinion, the Court said:

"The breach of a condition does not, of itself, divest the estate of the lessee, but to do this the lessor must, by express act, take advantage of the same by re-entry, or that which in law would be

equivalent thereto. (1 Wash. on Real Prop., 3d ed., marg. p. 319; Taylor's Land. and Ten., sec. 273; Fifty Associates v. Howland, 11 Met., 99; Elliott v. Stone, 1 Gray, 575.)

"A conditional limitation marks the period or event which is to determine the estate without entry or claim, and no affirmative act is necessary to vest the right in the grantor or him who has the next expectant interest. (Taylor's Land. and Ten., sec. 273, 2 Wash. on Real Prop., 3d ed., marg. p. 459.)

. "In case of doubt as to the true construction of a clause in a lease, it should be held to be a covenant, and not a condition or limitation, as the law does not favor forfeitures. (1 Wash. on Real Prop., 3d ed., marg. pp. 319, 320; Taylor's Land. and Ten., sec. 273; 4 Kent's Comm., marg. p. 129; Wheeler v. Dascomb, 3 Cush., 288.)"

As a limitation, the obligation under consideration would operate more harshly than as a condition subsequent. As stated in Justice Bonner's opinion, under a limitation the estate granted is automatically terminated on the happening of stipulated events, while under a condition subsequent the lessor has the election to terminate or continue the contract after breach of the condition. It would be wholly inconsistent with this Court's previous opinions to declare that this implied obligation operated as a limitation when we had refused to regard an identical obligation as a condition subsequent because of· the harshness of its operation as such in the forfeiture of vested rights.

The cases of Texas Pacific Coal & Oil Company v. Barker, 117 Texas, 418, 6 S. W. (2d) 1035, and Freeport Sulphur Company v. American Sulphur Royalty Company, 117 Texas, 439, 6 S. W. (2d) 1045, correctly recognized the right of lessors to recover damages for breaches of implied obligations for reasonable mineral production though such breaches continued for years subsequent to an initial breach. It was said in the opinion of Mr. Justice Pierson in the case last cited : *"So long as* the sulphur company breaches or violates its contractual duty to operate one plant, the royalty company may recover its compensation for the full amount of sulphur that should have been produced as contemplated in the contract." No damages could· be properly awarded the lessor for any failure by the lessee to drill for or produce or protect or market minerals after they had reverted to the lessor under the operation of a limitation on the lessee's estate. Both decisions necessarily

imply that the obligations breached were covenants and not limitations.

Contractual implications are justified only on the ground of necessity. 13 C. J., 558. Mr. Merrill suggests that the true basis of the whole doctrine of implied covenants in oil and gas leases may be found in the determination of courts to enforce fair dealing between lessor and lessee which could not otherwise be assured. Merrill's Covenants Implied in Oil and Gas Leases, sec. 112, page 266. While necessity and fair dealing alike require the implication of the obligation by the lessee in leases such as the one now before the Court for reasonable diligence in oil and gas exploration, development, and production, yet neither necessity nor fair dealing requires the further implication that such obligation shall operate as a limitation on the estate acquired by the lessee.

Under the doctrine that the lessee acquires no absolute but only a determinable fee, there can be no complete cessation of the use of the leased land for purposes of mineral exploration, development, and production, save at the cost of loss of the lessee's estate. It is easy to confuse this principle with that of abandonment, which implies an intention to give up the interests granted. There should be no such confusion. Regardless of the lessee's intention, his estate terminates, under its limitation, when there is complete cessation of actual use of the land for the purposes of the lease. There can be no fraudulent evasion with respect to the use which keeps the estate alive. But, it is not a partial use, nor a negligent use, nor an imperfect use—but cessation of use—which terminates the lessee's estate.

The soundness is sometimes questioned of the rule in Texas and elsewhere that interests declared to be fees in land may be lost by abandonment. Mr. Summers points out, however, that in all jurisdictions where the view prevails that an oil or gas lease creates a vested interest in the lessee, for the purposes of the lease, as soon as it is made, the courts "have not hesitated to declare such lease terminated by abandonment on that account . . . The general rule, therefore, seems to be that an oil and gas lease, regardless of what theory the courts may take as to the nature of the interest created thereby is extinguishable by abandonment." Ample foundation for the doctrine is to be found in the very nature and object of these mineral development conveyances and contracts. Summers Oil & Gas, page 519.

Not only may the lessor recover minerals granted under the ordinary oil or gas lease, which remain unproduced, on cessation of

mineral operations, or on the lessee's abandonment of his rights; but, where a solvent lessee is merely guilty of negligence, to the lessor's injury, in the conduct of the work of exploring, developing, producing or marketing the minerals, the lessor may recover his damages.

And despite our refusal to treat as a limitation or as a condition subsequent the implied covenant for reasonable development of premises leased for the mining of oil and gas, after they have been discovered, should there be a breach of such covenant for which an action for damages, for any reason, furnishes no adequate remedy, our courts, in the exercise of equitable jurisdiction, will compel the lessee to fully perform his obligation which constitutes a fundamental consideration for, and object of, the lease, or submit to cancellation of the lease. 1 Black on Rescission and Cancellation (2d ed.) sections 197, 198.

In Grubb v. McAfee, supra, we pointed out that the courts could do complete justice without adjudging a lease forfeited or terminated for breach of implied obligations, relative to development, even in cases where redress was impossible under an award of damages. On that subject; Mr. Merrill says:

"The extreme hardship of the straight-out forfeiture and the inadequacy of damages are both avoided by a unique form of relief which has received its chief development in Kansas,—an alternative decree, requiring the lessee to do those things necessary to fulfill his obligations under the implied covenant, within a time fixed by the court, the lease to be forfeited and cancelled, in default of such performance." Merrill's Covenants Implied in Oil & Gas Leases, sec. 103, p. 246.

The verdict of the jury, construed in the light of the explanatory charges, finds no more than a breach by defendant in error of a mere covenant. This verdict furnished no proper basis for any judgment for plaintiff in error. The case was manifestly not tried in accordance with the law as it is set forth in this opinion. The Court of Civil Appeals entered the correct judgment in reversing the judgment of the District Court and in remanding the cause for a new trial. The judgment of reversal by the Court of Civil Appeals is affirmed, but the case is remanded to the District Court for a new trial in accordance with this opinion.

*Judgment of reversal and remand affirmed.*