**John C. EDGAR, Appellant,**

v.

**SOUTHWESTERN OIL & REFINING COMPANY et al., Appellees.**

No. 17.

Court of Civil Appeals of Texas.

Corpus Christi.

March 19, 1964.

Rehearing Denied April 16, 1964.

Jesse G. Foster, Stamford, for appellant.

Gerald D. James of Head & James, Charles L. Hale, Jr., of Boone, Davis, Cox & Hale, Corpus Christi, Carmel F. Davis of Perkins, Floyd, Davis & Oden, Alice, for appellees.

GREEN, Chief Justice.

This appeal is from a summary judgment for the defendants in a suit on an alleged breach of a covenant to reasonably develop for the production of oil and gas a mineral lease on a 2258 acre tract of land in Hidalgo County, Texas. Appellant is the owner of the surface of the land and a portion of the mineral and royalty estate therein, and lessor in the lease. Appellees are owners

of the leasehold estate working interest, overriding royalty interests, and production payments under the lease.

Appellant filed his third amended original petition, hereinafter called the petition on July 20, 1962. On March 12, 1963, appellee Southwestern Oil & Refining Company and four other defendants filed a motion for summary judgment based on three specific grounds as follows: (1) that plaintiff's petition was insufficient to state a cause of action against them; (2) that the land covered by the mineral lease has been adequately and reasonably developed as a matter of law; (3) that the pleadings, substantive law governing the same, and affidavits attached to the motion show that there is no genuine issue of any material fact, and that defendants are entitled to judgment as a matter of law. Attached to such motion were affidavits of two officials of appellee Southwestern, a copy of the sales agreement with Tennessee Gas Transmission Co., and a trial brief.

Thereafter, all other defendant-appellees filed similar motions, to each of which the affidavits and other exhibits attached to Southwestern's motion were made a part by specific reference.

Plaintiff filed his answer to these motions, accompanying same with counter affidavits. The pleadings and the affidavits and other exhibits attached thereto, and the lease dated August 2, 1950, were all that was before the trial court for his consideration. He permitted no other evidence to be introduced. Upon the basis of such record, he found that there was no genuine issue as to any material fact, and that all of the defendants were entitled to judgment as a matter of law. Appellant excepted and has appealed to this Court. We reverse and remand the judgment.

■ The lease in question provides that after discovery of oil, gas or other mineral in paying quantities on the leased premises, "Lessee shall reasonably develop the acreage retained hereunder * * * " All

parties before this court recognize this express covenant to be the same as otherwise would have been implied by the terms of the lease. Such covenant requires a lessee, after production is discovered on the premises, to conduct further development with reasonable diligence, to the end that such operations would result in a benefit or profit for both the lessor and lessee. Clifton v. Koontz, 160 Tex. 82, 325 S.W.2d 684, 79 A.L.R.2d 774.

It appears from the petition and affidavits that only one well dually completed has been drilled on the 2258 acres covered by this lease. That was completed near the southern boundary in the southeast quarter of the tract in February, 1955, in the 10,062 foot zone and later, in 1958, dually completed at 9,900 feet. The petition alleges that it has been producing gas and associated liquid hydrocarbons profitably since such completion at the rate of approximately 500 M.C.F. a day.

There are further allegations as to other producing gas and distillate wells being completed within 500 feet of the southern boundary of the tract on adjoining land at depths of 11,396 and 11,275 feet, and of a well being drilled on other land within 2400 feet of the north boundary to a depth of 11,045 feet, all evidencing the existence of a productive pool oval in shape covering all of the leased land except the northeast corner. Leasing activity in the area is detailed. Appellees' affiants show this last well to have been abandoned as a nonproducer, but appellant's affiants raise an issue as to whether it could be made to produce profitably with the use of information now available.

The petition states that reasonable development would have required drilling a well on the northwest 320 acre tract adjoining the discovery well within 6 months after completion thereof, and that such a well, and other wells, could have been drilled to the known production sands with a reasonable expectation of profit to lessee. There are allegations of facts showing

failure on the part of defendant lessees to use reasonable diligence in developing this lease after discovery. The potential productivity of other zones are set forth, and the existence of zones and strata capable of being made to produce in paying quantities with profit to the lessee and lessor, and the area of the location of such zones, are alleged.

The petition states facts allegedly showing that the known zones have not been properly developed by the drilling on the 2258 acre tract of the one well dually completed in the southeast corner thereof, and that a prudent operator, under the circumstances and using reasonable diligence, would have proceeded to further drill and develop this lease, and that such development would have resulted in profit to lessor and lessees. Allegations of the existence of a market for additional productions are made. The petition alleges the production which could reasonably have been expected with such prudent development, the money value of such production, and the loss which plaintiff says he has sustained because of lessees' failure to use ordinary diligence. It alleges that written notice and demand to develop was delivered to lessees prior to filing of suit. It states that damages which are susceptible of proof are an inadequate remedy under the circumstances.

By reason of all such allegations, plaintiff in his petition prays for (1) total cancellation of the lease; (2) cancellation of all of the lease except as to the 320 acres surrounding the producing wells; (3) for an order requiring the lessees to proceed with drilling a well on a space of 320 acres adjoining the discovery well within 90 days, with a penalty of cancellation if the order is not complied with; (4) judgment for his ascertainable damages.

Appellees submit that this petition does not allege a cause of action for failure to reasonably develop, and that the summary judgment could properly have been rendered on such inadequate pleadings, citing

Clifton v. Koontz, 160 Tex. 82, 325 S.W.2d 684, 79 A.L.R.2d 774 and Felmont Oil Co. et al. v. Pan American Petroleum Corporation, et al., Tex.Civ.App., 334 S.W.2d 449, writ ref. n. r. e.

In discussing lessees' obligation to reasonably develop an oil lease after production, the opinion in Clifton v. Koontz, supra, among other matters states:

"While it is true that each separate stratum or horizon would be entitled to separate development, yet it is equally true that the burden rests upon the lessor to prove that the producing stratum required additional wells, or that strata different from that from which production is being obtained, in reasonable probability exists, and that by the drilling of additional wells there would be a reasonable expectation of profit to the lessee. Under such circumstances, the lessee's obligation as to development is measured by the rule of reasonable diligence or what an ordinarily prudent and diligent operator would do, and he is not required to continue in the performance of these duties or to engage in the performance of such implied duties unless there is a reasonable expectation of profit, not only to the lessor, but also to the lessee."

The following quote as to the burden resting on plaintiff in such a suit is from Felmont Oil Co. et al. v. Pan American Petroleum Corporation, et al, supra:

"Assuming as we do that there is no valid distinction between the implied covenant to 'explore' and the implied covenant to 'develop', the burden rests upon appellants to do more than merely prove that a ready, able and willing operator would drill, regardless of the certainty of profit. Appellants are required to prove:

"(1) That the lessees failed to measure up to the standards of the prudent operator;

"(2) That producing strata or horizons, which they contend should have been further explored or drilled, required additional wells;

"(3) That strata or horizons other than those from which production is being obtained (on which further exploration or drilling is sought), exists in reasonable probability;

"(4) That by the drilling of additional wells, there would be a reasonable expectation of profit, not only to the lessor, but also to the lessee."

■ We hold that, in the absence of special exceptions, the petition in general terms meets the requirements of a suit of this nature and is sufficient to entitle appellant to a trial on the alleged merits of his case. Clifton v. Koontz, supra; Perkins v. Mitchell, 153 Tex. 368, 268 S.W.2d 907; W. T. Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.2d 27; Pan American Petroleum Corp., et al v. Hardy, Tex.Civ. App., 370 S.W.2d 904, writ ref. n. r. e.

■ However, even if it were otherwise, this appeal must be determined on the entire record before us, and not merely on the alleged sufficiency or insufficiency of the petition. We quote from Womack v. Allstate Insurance Company, 156 Tex. 467, 296 S.W.2d 233, as follows:

"Under the provisions of Rule 166–A, Texas Rules of Civil Procedure, summary judgment may be rendered only if the pleadings, depositions, admissions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court will normally look to the pleadings to determine the issues that may exist in the case, but when the depositions, admissions or affidavits disclose facts which show that an amendment to the pleadings of the opposite party will render the position of the moving party insupportable under the substantive law, it cannot be said that the latter has established his right to judgment as a matter of law. As stated in Rossiter v. Vogel, 2 Cir., 134 F.2d 908, 912, '* * * where facts appear in affidavits upon motion for a summary judgment which would justify an amendment of the pleadings, such amendment should not be prevented by the entry of a final judgment. * * *' We hold, therefore, that when the affidavits or other summary judgment 'evidence' disclose facts which render the position of the moving party untenable, summary judgment should be denied regardless of defects which may exist in the pleadings of the opposite party."

Attached to appellees' motions for summary judgment are two affidavits, one by Charles A. Steen, manager of production for appellee Southwestern, and the other by John Harris, chief petroleum engineer for the same appellee. Both affidavits were executed in March, 1963. Both of these men qualify as expert geologists and petroleum engineers, and both show intimate familiarity with the lease in question, its productive capacity or incapacity from various zones and sands, and with the producing and non-producing wells on adjoining lands. After stating such information as called for from their personal observations and from the records available to them, they each state under oath that they know that this entire lease has been adequately developed, and that a prudent operator would not drill to any of the zones mentioned in plaintiff's petition with any reasonable expectation of deriving a profit therefrom.

Steen further cites the terms of the sales contract with Tennessee Gas Transmission Co., and states that the recoverable reserves originally contained in the 9950 and 10,050 foot reservoirs from which the dual well on the lease is producing have been determined according to the terms of the contract, and that said well has been from the date of its final completion to November 21,

1959, the date the suit was filed, three and a third years prior to the execution of the affidavit capable of producing the maximum amount of gas marketable from said reserves under said contract. He concludes from such statement that as of November 21, 1959, a date more than two and a half years before the filing of appellant's trial petition on July 20, 1962, such fact would have prevented further development from such reservoirs from being profitable to lessees.

Harris' affidavit ends with this statement:

"In view of the above data I state upon my own personal knowledge that said 10,200 foot and 10,300 foot sands have no productive merit under the acreage covered by the subject lease. The 9,860 sand deserves further evaluation in the hole now constituting the Bank well before the well is plugged and abandoned. However, there is no technical or economic justification for the drilling of a well to this sand for evaluation purposes. Therefore, said Bank lease has been adequately and reasonably developed and a reasonably prudent operator could not drill additional wells to the 9,860, 9,950, 10,050, 10,200 or 10,300 foot depths underlying said lease with a reasonable expectation that any such well would result in additional production which would result in a profit to such operator."

■ Upon the filing of these affidavits by appellees it became necessary for appellant, in order to be entitled to a trial on the merits, to show opposing evidentiary data sufficient to raise genuine issues of the material facts of his case. Gulf C. & S. F. Ry. Co. v. McBride, 159 Tex. 442, 322 S.W. 2d 492; Kuper v. Schmidt, 161 Tex. 189, 338 S.W.2d 948. Appellant filed affidavits of three men also familiar with the geological status and drilling operations on the leased land and contiguous properties. David P. Hoover, an experienced graduate geologist and petroleum engineer, and registered professional engineer of the State of Texas, had been associated with the driller in the drilling and completion of the discovery well on the lease. He swore to facts demonstrating his intimate familiarity with the productive and non-productive areas on the leased lands and on neighboring properties and showing the reasonable probability of profitable production being obtained from further development. W. R. Phillips, a graduate professional geologist and a consulting petroleum engineer, has done considerable work and study as to the various sands of the producing and non-producing wells of the area, and showed his qualifications to testify about them. Paul R. Wimberly, an owner of mineral interests in adjacent land and an oil field driller of 23 years experience, also gave sworn testimony tending to rebut the statements of appellees' affiants.

Without going further into the details of these affidavits we find the facts and opinions expressed by the affiants of each party to be so in conflict as to raise definite genuine issues of material fact as to whether the leased property has been reasonably developed, and as to whether an ordinarily diligent and prudent operator would conduct further developments with reasonable expectation of profit to lessee and lessor.

■ Appellees insist that no genuine issues of material facts are created by appellant's affidavits because, so appellees say, they are based on hearsay and statements of opinion. Box v. Bates, 162 Tex. 184, 346 S.W.2d 317; Heien v. Crabtree, (Tex.Civ.App.1963) 364 S.W.2d 271, Affd., Tex., 369 S.W.2d 28. As we stated above, all of appellant's affiants, as well as appellees' affiants, in their affidavits showed familiarity with the matters about which they gave factual testimony, and qualified as expert witnesses on the subjects concerning which they expressed opinions.

In this regard, a large portion of appellees' affidavits were expressions of the affiants' conclusions. As to a number of their factual statements they did not produce the source of their information. Their

affiant Steen limits his views as to a market for additional production to a period which ended over two and a half years prior to the filing of appellant's trial petition, and more than three and a third years before he signed the affidavit.

Appellees rely strongly on Clifton v. Koontz, 160 Tex. 82, 325 ·S.W.2d 684, 79 A.L.R.2d 774, as authority for their contention that, based on the entire record, the trial court properly granted the summary judgment. We have carefully studied this opinion, as well as the annotation in 79 A.L.R.2d 792 et seq., and find that it is not authority against the position taken by appellant. The appeal was from a trial on the merits. The decision of the Supreme Court on the issue of breach of an implied covenant to further develop the lease was based on the failure of plaintiff to discharge the burden *to prove,* as required, that the lessees failed to measure up to the standard of the prudent operator. The lease covered only 350 acres and had one producing gas well. The opinion, insofar as it holds that the lessor had not complied with his burden of proving a violation of the covenant to reasonably develop, entirely divorces itself from the situation in our case when it says:

"However, it should be noted that we do not have a factual situation where the lease covers several thousand acres and an effort is being made to hold such vast acreage by showing production from a comparatively small area. Neither are we confronted with a situation where an unreasonably long length of time has elapsed since the last development of the leased premises. Therefore, we do not pass upon these questions."

For a further discussion of the laws applicable to this situation, see the annotation following Clifton v. Koontz in 79 A.L.R.2d 792 et seq., and article in 42 Texas Law Review, page 199, et seq.

Applying the rules of summary judgments to the present appeal, it is our opinion that the record does show the existence of material genuine fact issues, and that the summary judgment should not have been granted. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929; Gardner v. Martin, 162 Tex. 156, 345 S.W.2d 274; Bolin et al v. Tenneco Oil Co., et al., Tex. Civ.App., 373 S.W.2d 350, writ ref. n. r. e.

Appellees in their third counterpoint assert that in no event does the record show that appellant has any remedy for cancellation of the lease, even though we hold he may have a cause of action for failure to reasonably develop, citing the following provision of the lease:

"The breach by Lessee of any obligation arising hereunder shall not work a forfeiture or termination of this lease nor cause a termination or reversion of the estate created hereby nor be grounds for cancellation hereof in whole or in part."

As stated above, there were no special exceptions directed at plaintiff's third amended petition. Since we have held that the cause should be reversed because of the existence of genuine issues of material facts as shown by the pleadings and affidavits, any further ruling as to the respective rights and remedies, if any, of the parties should be determined in appropriate proceedings in the trial court.

The trial court having certified that the two geological reports attached to appellant's Bill of Exceptions No. 1 were not admitted in evidence, and were not a part of the record in the case, we have not considered such reports in reaching our decision in this cause.

Reversed and remanded.