EXXON COMPANY, U. S. A. and Cities Service Minerals Corporation, Appellants,

v.

DALCO OIL COMPANY and United States Steel Corporation, Appellees.

No. 1594.

Court of Civil Appeals of Texas, Corpus Christi.

Nov. 6, 1980.

Rehearing Denied Dec. 11, 1980.

Donald G. Canuteson and Sheree Lynn McCall, Strasburger & Price, Dallas, for appellants.

Robert D. Payne, Payne & Spradley, Dallas, J. M. Burnett, Kleberg, Dyer, Redford & Weil, Corpus Christi, for appellees.

## OPINION

YOUNG, Justice.

This appeal of an order granting summary judgment raises both procedural questions relating to the burden of proof in summary judgment proceedings and substantive issues relating to the obligations of the parties to a uranium lease. Factually, the appeal is complicated by the transfers of interests in and to the mineral rights of a tract of land in Live Oak County, Texas, and the subsequent cross–action filed by the parties. It is the holding of this Court that a genuine issue of material fact re-

mains to be resolved. Accordingly, we reverse and remand the cause of the trial court for trial.

A review of the record reflects the following facts: Anton and Tillie Pawlik are the owners of a tract of land known as Tract 414 in Live Oak County, Texas. On December 12, 1952, the Pawliks executed an oil and gas lease to Humble, presently known as Exxon. Exxon then assigned 75% of its uranium interests to Cities Services. As a result of additional assignments and transfers of interest, Sabine and U. S. Steel each acquired an undivided one–half interest in all uranium and fissionable materials in the leasehold estate created by the 1952 lease, subject to the overriding royalties reserved by Exxon and Cities Service.

On May 21, 1974, Sabine–Steel notified the Pawliks that they would be conducting exploration operations for uranium on the lease. On June 13, 1974, the Pawliks, through their attorney, advised Sabine–Steel that they did not recognize any right of Sabine–Steel to explore and produce the mineral rights. Subsequent to this action, the Pawliks executed a mining lease on January 27, 1975, to Everest Exploration for uranium exploration and production. A second lease expanding the terms of the first to include oil, gas and other minerals was executed on March 25, 1975, by the Pawliks to Everest Exploration. On March 17, 1975, Sabine–Steel again notified the Pawliks that they intended to conduct operations, to which the Pawliks replied that they would treat Sabine–Steel as trespassers.

On May 12, 1975, Sabine–Steel commenced legal action against the Pawliks and Everest Exploration for declaratory relief fixing the rights of the parties to explore and produce the tract for uranium and other fissionable materials. On August 16, 1976, Exxon and Cities Service were joined as third party defendants by the Pawliks and Everest in an action alleging that the 1952 lease had expired because of cessation of production. Exxon filed its counterclaim against Everest and the Pawliks on September 6, 1977, to clear title on

its assignment to Sabine–Steel and to claim its overriding royalties.

On September 12, 1977, the Court signed an Interlocutory Judgment, which was agreed to by all parties except Exxon and Cities Service. The judgment decreed that the 1952 lease had expired prior to January 27, 1975, and that the 1975 lease to Everest was the only valid lease. On September 12, 1977, Everest assigned all its interest in the 1975 mineral lease to Sabine–Steel in a settlement agreement, for which Sabine–Steel paid valuable consideration. Exxon then filed its cross–action on October 25, 1977, alleging Sabine–Steel had breached its duty by failing to reasonably develop the mineral interests on the tract during the period the first lease was in effect and its duty of fair dealing owed Exxon by acquiring this new assignment. Cities Service filed a similar cross–action on March 31, 1978.

On September 27, 1978, Sabine–Steel filed their motion for summary judgment. Exxon and Cities Service controverted this motion by way of a response filed on November 8, 1978. Sabine–Steel amended their motion for summary judgment on November 13, 1978. On July 3, 1979, the trial court granted Sabine–Steel's amended motion for summary judgment, from which Exxon and Cities Service bring this appeal.

In the interest of clarity, the parties will be referred to according to their interests in the property. Exxon and Cities Service, having identical interests, will be referred to as Exxon. Sabine (formerly Dalco Oil Company) and U. S. Steel will be referred to as Sabine. The Pawliks and Everest Exploration will each be referred to individually.

■ A resolution of this appeal first requires the application of the rules controlling the burden of proof in summary judgment proceedings. Rule 166a, T.R.C.P.; *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671 (Tex.Sup.1979). Contrary to assertions by the parties in this case, the burden of proof remains on the movant, who "... must establish his entitlement to a summary judgment on the issues expressly presented to the trial court by conclusively proving all essential elements of his cause of action or *defense* as a matter of law." See *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.Sup.1972); *City of Houston v. Clear Creek Basin Authority*, supra at 678. *Clear Creek* does not alter this burden. See *Fantastic Homes, Inc. v. Combs*, 596 S.W.2d 502 (Tex.Sup.1979).

■ The posture of the parties in the cause below placed Sabine as the cross–defendant–movant in the summary judgment proceeding. In that situation, the defendant–movant must establish that no genuine issues exist as to any material fact, and that it is entitled to judgment as a matter of law on each of plaintiff's theories of recovery for which it seeks summary judgment. *Gaddis v. Smith*, 417 S.W.2d 577, 582 (Tex.Sup.1967); *American Petrofina Company of Texas v. Crump Business Forms, Inc.*, 597 S.W.2d 467, 470 (Tex.Civ.App.– Dallas 1980, writ ref'd n. r. e.). The question on appeal, as well as in the trial court, is not whether the summary judgment proof raises fact issues with reference to the various essential elements of the plaintiff's causes of action, but it is whether the summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to one of the essential elements of each of the plaintiff's causes of action. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 829 (Tex.Sup.1970).

In the case at bar, cross–plaintiff Exxon alleges several different causes of action: 1) Sabine failed to develop the property for the production of uranium, thereby breaching both the express and implied covenants in the 1952 lease to reasonably develop the mineral interests; 2) Sabine breached the provisions of the assignment to it by joining in the Agreed Interlocutory Judgment, which declared the 1952 lease to be terminated; 3) Sabine breached a fiduciary duty owed to Exxon by agreeing to the judgment which caused a "wash–out" of Exxon's overriding royalties.

■ In order for a defendant to be entitled to a summary judgment as to the en-

tire case, it must conclusively show that facts do not exist as to at least one element of the essential elements of each of the plaintiff's asserted causes of action. *American Petrofina Company of Texas v. Crump Business Forms, Inc.*, supra, at 470. The burden of proof is on the defendant–movant to present evidence to sufficiently negate each of the plaintiff's several causes of action. If this burden is met by the defendant, then the plaintiff must then present evidence that demonstrates that a fact issue still exists, otherwise the defendant is entitled to summary judgment.

To apply the burden of proof to the case before us, it was first incumbent upon Sabine to present evidence that negates at least one essential element in each of the various causes of action asserted by Exxon. If Sabine had met this burden, Exxon would have had to introduce evidence which conclusively demonstrated that a fact issue still remained on one or more of its theories of recovery.

Exxon contends among other matters, that a genuine issue of material fact exists as to fulfillment by Sabine of the implied covenant in the 1952 lease to reasonably develop the uranium interests on the tract. It is their position that a breach of this implied covenant to develop occurred since no mining of the tract took place during the term of the lease even though logs and other data indicated that uranium was present under the property in commercial quantities. Inherent in this contention is the presumption that commercial *discovery* of uranium deposits instead of actual *production* of the uranium brings into play an implied covenant to reasonably develop the minerals in the tract.

■ The implied covenant to reasonably develop mineral interests has incrementally changed over the course of this century to reflect primarily the rapid development of the oil and gas industry. This implied covenant has been liberalized from its common law origins such that it now requires " . . . diligent and reasonable development and operation in leases which make the lessor's compensation depend upon development and operation." *Freeport Sulphur Co. v. American Sulphur Royalty Co.*, 117 Tex. 439, 6 S.W.2d 1039 (1928).

Even though application of this covenant is usually found in the context of oil and gas leases, many of the early cases interpreted the effect of the covenant on leases involving other minerals. In those cases, the implied covenant to reasonably develop took effect upon the *discovery* of minerals in paying quantities. In *Freeport Sulphur Co. v. American Sulphur Royalty Co.*, supra, the contracting parties knew of the presence of sulphur in the ground in large quantities. The Court implicitly recognized the implied covenant to reasonably develop after *discovery*, even though there was no need to enforce such implied covenant because of the express provision for development in the leases. In another case involving the *discovery* of sulphur, the implied covenant to reasonably develop was enforced in order "(1) to ascertain whether the deposit existed in commercial quantities; (2) thereafter to reasonably develop the lease as to sulphur, both as regards exploration and production. *Union Sulphur Co. v. Texas Gulf Sulphur Co.*, 42 S.W.2d 182 (Tex.Civ.App.—Austin 1931, writ ref'd).

A similar case involving the applicability of the implied covenant to coal was that of *Benavides v. Hunt*, 79 Tex. 383, 15 S.W. 396 (1891). The Court recognized the implied covenant to reasonably develop if " . . . the mine . . . was found to contain coal which could be profitably worked." Such a holding would indicate that the implied covenant to reasonably develop the mineral interests takes effect upon discovery of minerals in paying quantities.

Some of the first cases applying this covenant to oil and gas leases relied upon the same rationale, that of "discovery in paying quantities" being the key to enactment of the implied covenant. The Supreme Court, citing *Benavides*, held that " . . . if the land was found to contain coal which could be profitably worked, the law implied an agreement to that effect." *Grubb v. McAfee*, 109 Tex. 527, 212 S.W. 464, 465 (1919).

The Supreme Court further interpreted this implied covenant to reasonably develop upon discovery of minerals in paying quantities in subsequent cases:

"Where a mining lease provided for oil and gas royalties, and failed to define the lessee's duty as regards development *after discovery of paying oil or gas*, the law implied the obligation from the lessee to continue the development and production of oil or gas with reasonable diligence." *W. T. Waggoner Estate v. Sigler Oil Co.*, 118 Tex. 509, 19 S.W.2d 27, 29 (1929). See also *Texas Co. v. Davis*, 113 Tex. 321, 254 S.W. 304, 308 (1923). (Emphasis added.)

As the development of the oil and gas industry grew in importance, the interpretation of this implied covenant changed. *Discovery in paying quantities* was no longer the key to the implied covenant, in oil and gas cases, instead, *production* was the key to the implied covenant to reasonable development.

"The Courts generally have recognized the implied covenant to reasonably develop the premises after *production* is obtained. Such implied covenant requires a lessee, *after production is discovered* on the premises, to conduct further development with reasonable diligence, to the end that such operations would result in a benefit or profit for both the lessor and the lessee." *Clifton v. Koontz*, 160 Tex. 82, 325 S.W.2d 684, 693–694 (1959). (Emphasis added.)

The implied covenant becomes effective after production is discovered.

■ The phrases "after production is discovered" and "discovery in paying quantities" present more than a semantical difference. Production usually implies production "in paying quantities" and this means bringing to the surface and marketing a sufficient amount of the mineral to allow the lessee a profit over operating expenses regardless of whether there is recovery of the initial drilling or mining investment. See *Duke v. Sun Oil Company*, 320 F.2d 853 (5th Cir. 1963). Recently, production was defined in one case as ". . . actual physical extraction of the mineral from the land." *Monsanto Co. v. Tyrrell*, 537 S.W.2d 135 (Tex.Civ.App.–Houston [14th Dist.] 1976, writ ref'd n. r. e.). See also *Exxon Corp. et al. v. Triphene Middleton et al.*, # B–7979, 24 Tex.Sup.Ct.J. 6, October 4, 1980. In older cases it was said that "(t)he primary meaning of the word 'discover' does not include production, it merely means to find." *Bouldin v. Gulf Production Co.*, 5 S.W.2d 1019 (Tex.Civ.App.–Fort Worth 1928, writ dism'd). See also *Morrison v. Swaim*, 220 S.W.2d 493 (Tex.Civ. App.–Eastland 1949, writ ref'd n. r. e.).

■ Uranium, unlike oil and gas, does not require production to determine whether it exists in paying quantities. Production is not required to evaluate the commercial value of uranium in the ground. The presence of uranium in paying quantities is ascertainable by many technical and expert evaluations recognized in the industry. It may not be necessary to actually extract the mineral from the ground in order to discover its commercial value. We hold that the implied covenant to reasonably develop uranium is not contingent upon actual production of the mineral. A much better test is whether uranium, when discovered, exists in the leasehold estate in paying quantities.

■ The record in this case raises a question of material fact as to whether uranium, when discovered, existed in commercial quantities during the time the 1952 lease was in effect. Testimony from expert witnesses which estimated the commercial value of the uranium in the ground before production had commenced is present in the record of this case, along with data logs and geological surveys. The issue of whether uranium existed in paying quantities should have been submitted to a jury. See *Edgar v. Southwestern Oil & Refining Company*, 377 S.W.2d 225 (Tex.Civ.App.–Corpus Christi 1964, writ ref'd n. r. e.); *Shoni Uranium Corporation v. Federal–Radrock Gas Hills Partners*, 407 P.2d 710 (Wyo.1965); and *Vitro Minerals Corporation v. Shoni Uranium Corporation*, 386 P.2d 938 (Wyo. 1963).

In finding that the trial court improperly granted the summary judgment, we therefore reverse and remand the cause for trial. We need not consider Exxon's other point of error and those specifically relating to the special exceptions and motion to compel filed by Exxon. Because of the necessity of a full trial, we expect that the trial court will permit proper and full discovery below.

The judgment of the trial court is reversed and the cause is remanded for trial.

## OPINION ON MOTION FOR REHEARING

Appellees, in their motion for rehearing, complain of our original opinion by contending, among other things, that we have advanced extraordinary factual premises not supported by the evidence and have misconstrued the Supreme Court holdings on Texas mineral law in *Clifton* and *Sunac*.[1] In this, they are in error. We held in this summary judgment case, that a genuine issue of material fact still exists as to whether a breach of the implied covenant to reasonably develop the uranium interest on the tract in question had occurred.

Additionally, appellees argue in their motion for rehearing that this Court has made a bold departure from the established law relating to the implied covenant of reasonable development of mineral interests. Such is not the case. This covenant has always imposed a duty upon the lessee to develop the mineral interests once the minerals are discovered in paying quantities. Concerning oil and gas, "... after discovery of oil, gas, or other minerals in paying quantities, the obligation to reasonably develop comes into being." *Shell Oil Company v. Stansbury*, 401 S.W.2d 623, 636 (Tex.Civ.App.—Beaumont 1966, writ ref'd n. r. e. at 410 S.W.2d 187).

Discovery in paying quantities can be accomplished by different means, depending on the type of mineral interest. Inherent to the nature of oil and gas is the requirement that production be obtained before it can be discovered in paying quantities. Oil and gas require actual production to ascertain "(w)hether there is a reasonable basis for the expectation of profitable return from the well...." *Clifton v. Koontz*, 160 Tex. 82, 325 S.W.2d 684 (1959). The evidence in this record shows that uranium, on the other hand, can be discovered in paying quantities without actual extraction from the ground. It is possible, therefore, to ascertain through expert evaluations whether uranium ore exists in commercial quantities in the ground.[2]

It is within the province of the finder of facts to make this determination of whether uranium did exist in commercial quantities. To aid the fact finder in this determination, the courts have invoked the doctrine of the reasonable and prudent operator test. *Clifton v. Koontz*, supra at 691; *Senter v. Shanafelt*, 233 S.W.2d 202 (Tex.Civ.App.—Fort Worth 1950, no writ). Upon retrial of this cause, the jury (or the trial court as the case may be), should evaluate the performance of Sabine in relation to the way in which a reasonable and prudent operator would have complied with the implied covenant of reasonable development. If uranium is found by the fact finder to have existed in commercial quantities during the time the lease was in effect, the next question to be determined is whether a reasonable and prudent operator would have developed the tract? The fact question raised by the record must be determined in a trial on the merits.

The motion for rehearing is overruled.

---

1. *Clifton v. Koontz*, 160 Tex. 82, 325 S.W.2d 684, 693–4 (1959); *Sunac Petroleum Corp. v. Parkes*, 416 S.W.2d 798 (Tex.Sup.1967).

2. Actual production of uranium is not a prerequisite to such a determination.