COLE PETROLEUM COMPANY v. UNITED STATES GAS & OIL COMPANY.

No. 5530. Decided July 22, 1931.
(41 S. W., 2d Series, 414.)

*Hicks, Hicks, Dickson, Bobbitt & Lange* and *Yale Hicks,* all of Laredo, for appellant.

*Mann, Neel & Mann,* of Laredo, for appellee.

MR. JUSTICE GREENWOOD delivered the opinion of the court.

This suit was brought in the form of an action of trespass to try title to a block of forty acres of land in Webb county by the United States Gas & Oil Company against the Cole Petroleum Company.

Both parties claim rights in the land by virtue of assignments of a mineral lease from R. R. Kirkpatrick, trustee.

The United States Gas & Oil Company held the senior conveyance from Kirkpatrick, trustee, of date June 19, 1925. By that conveyance, Kirkpatrick, trustee, as the owner of an oil and gas lease of forty acres, assigned all his right and interest under said lease in and to said forty acres to the United States Gas & Oil Company, in consideration of $1,000 and of the following covenants and agreements of the Gas & Oil Company, called in the contract second party, to-wit:

"And in consideration of the premises, SECOND PARTY hereby covenants and agrees:

"FIRST—To erect or cause to be erected upon the premises above described, on or before the 15th day of August, 1925, an eighty-six (86) foot drilling derrick, preparatory to the drilling of a test well for oil or gas thereon.

"SECOND—To begin the actual drilling of a test well thereon for oil or gas production purposes on or before the 15th day of September, 1925.

"THIRD—To prosecute the drilling of this test well with reasonable diligence and due care as a test well, through the present producing gas sand, already developed in the Cole

Petroleum Company wells numbers 4 and 5 to the horizon of the Yegua Sand at an approximate depth of 2500 feet. This Yegua Sand shall be properly cored and tested for oil and gas or both.

"FOURTH—After completion of the first or test well as above indicated by SECOND PARTY, then SECOND PARTY shall proceed with such additional development as is reasonably necessary to properly protect the area covered by this lease against withdrawals by surrounding wells, and to develop said lease to a normal stage of production.

"FIFTH—The failure on the part of SECOND PARTY to comply with the drilling and development provisions above outlined in the manner and form stated, shall work as a forfeiture of this lease, and it shall revert to and vest in FIRST PARTY (Kirkpatrick, trustee).

"SIXTH—To deliver to the FIRST PARTY, free of cost, in the pipe line to which he may connect his well, the equal one-eighth part of all oil produced and saved from this tract.

"SEVENTH—To pay to the FIRST PARTY three-eighths of one cent per thousand cubic feet from all gas produced and saved from this tract, measurements to be computed according to the standard engineering rule for measuring gas.

"EIGHTH—The one thousand dollar consideration of this assignment shall be considered as an advance payment of the first one thousand dollars due to FIRST PARTY for the one-eighth overheard royalty of all oil and gas produced and saved from this tract, according to the terms and provisions of this agreement.

"NINTH—In event of failure by SECOND PARTY to fulfill any of the covenants of this agreement, forfeiture of this assignment to FIRST PARTY and forfeiture of the one thousand dollar consideration of this assignment shall act as sole liquidated damages to FIRST PARTY.

"TENTH—The royalties hereinabove provided for, it is understood and agreed, are in addition to and independent of any royalties provided in the original oil and gas mining lease above mentioned, which are payable to the owner of the fee, it being understood that SECOND PARTY is to pay any royalty due the owner of the fee as provided in said original lease."

By proper transfer, the Cole Petroleum Company succeeded to the rights of Kirkpatrick, trustee, under the lease of said forty acres, after said trustee had declared a forfeiture of his assignment to the United States Gas & Oil Company for failure

to perform the covenants of said lease with respect to both drilling and marketing of gas discovered.

The sole question for our determination is whether, under the findings of the jury, which find support in proper pleadings and evidence, the rights of the United States Gas & Oil Company had been forfeited.

The jury found that there was no failure on the part of the United States Gas & Oil Company to drill test or offset wells as required by the contract.

The jury made other findings as follows:

"SPECIAL ISSUE No. 4. Could the United States Gas & Oil Company have sold and delivered the gas from wells numbers 1 and 2 to the Southern Gas Company at any time after the completion of the pipe line of the Southern Gas Company, to the vicinity of block 10 as shown on the plat in evidence? Answer 'Yes' or 'No.'

"We the jury answer Special Issue No. 4: Yes."

"SPECIAL ISSUE No. 5. If you answered the next foregoing Special Issue 'Yes,' then state during what length of time the plaintiff United States Gas & Oil Company might have sold and delivered the gas from said wells to the Southern Gas Company; answer by stating from what date to what date.

"We the jury answer Special Issue No. 5: From date of completion of pipe line in Feb. 1926 to present date (Oct. 25, 1928)."

"SPECIAL ISSUE No. 6. If you have answered Special Issue Number 4 'Yes,' then answer: Was the failure of the plaintiff United States Gas & Oil Company to sell and deliver the gas from wells numbers 1 and 2 on block 10 reasonable under the circumstances, taking into consideration the interest of both parties to the original and supplemental contracts in evidence before you? Answer 'Yes' or 'No.'

"We the jury answer Special Issue No. 6: No."

On these findings, the district court adjudged that the United States Gas & Oil Company take nothing and cancelled the assignment from Kirkpatrick, trustee, to said company. Concluding that the jury's findings negatived the only grounds for forfeiture under the stipulations of the lease, the Honorable Court of Civil Appeals at San Antonio reversed the judgment of the district court and rendered judgment for the United States Gas & Oil Company. 17 S. W. (2d) 839.

■ Section four of the assignment obligates the Gas & Oil Company, after the completion of the first or test well, to "proceed with such additional development as is reasonably neces-

sary * * * to develop this lease to a normal state of production."
Looking to all the terms of the contract, developing the lease
to a normal state of production necessarily involved marketing
oil or gas discovered in paying quantities in order to yield part
of the oil or cash for the gas to the assignor, as well as profit
to the assignee. The whole object of the contract was to make
the land productive. The stage of production was not reached
by the preliminary steps of exploration and discovery. Suc-
cessful exploration and discovery lay the basis for marketing
of gas in such a state as to have a value and to command a
price. Black's Law Dictionary defines production in political
economy as "the creation of objects which constitute wealth."
Gas or oil connected with a pipe line or other means of trans-
portation to market is an object which constitutes wealth.
Neither gas nor oil constitutes wealth in such condition as pre-
cludes removal from its native earth stratum.

In Waggoner Estate v. Sigler Oil Co., 118 Texas, 519, 19
S. W. (2d) 27, the court quoted with approval the statement
in Merrill's Covenants Implied in Oil & Gas Leases, sec. 117,
p. 279, that "the lessor assuming the presupposition for de-
velopment may justifiably claim to have his land fully devel-
oped *and to realize all the royalties it is capable of producing,*
in the absence of an agreement to the contrary." Here the
contract, instead of prohibiting or excusing development, ex-
plicitly requires the doing of that which is reasonably necessary
to secure normal production, in order to secure the stipulated
considerations to the assignor.

Not only does the language of section four forbid the stop-
ping of development with discovery, but the language of sec-
tion five repels the construction that the obligations imposed
by section four could be met by successful drilling alone. By
section five the parties themselves construe section four as
containing provisions for "development" in addition to those
for "drilling." Under the interpretation of section five by the
Court of Civil Appeals, the provisions of section four required
"drilling" only. Thus no effect is given the words "and de-
velopment" in section five, and thereby the elementary rule is
violated against treating additional words as uselessly inserted
in a written contract.

Under the ordinary oil or gas lease, the lessee is not re-
quired to market the yield of lease land at any certain time or
for any certain price. When the lease is silent on the subject
the lessee's duty is to exercise ordinary or reasonable care.
The assignment before us explicitly fixed the degree of care

to be used by the assignee in proceeding to develop the lease to a normal stage of production as such care "as is reasonably necessary." The jury found that reasonable care was not used by the assignee to connect the gas wells with a pipe line nor to sell the gas to the advantage of the parties. Without the exercise of reasonable care to market the gas, there could be no compliance with the assignee's obligation to proceed with the development reasonably necessary to bring the lease to a normal stage of production. The parties expressly stipulate that noncompliance with this obligation of the assignee "shall work as a forfeiture of this lease and it shall revert to and vest in the first party." The district court was therefore warranted in cancelling the assignment to defendant in error under sections four and five.

If the language of section four did not carry an express covenant for reasonable diligence in marketing the output of gas in paying quantities from wells on the forty acres, still such covenant would be implied.

That was the holding when this court, through Chief Justice Stayton said: "Although there was no express agreement or requirement that Hunt should operate the mine if on development it was found to contain coal which could profitably be worked, yet there was an implied agreement to that effect." Benavides v. Hunt, 79 Texas, 394, 395, 15 S. W., 396.

Reaffirming the doctrine of Benavides v. Hunt, the court declared:

"The opinion of the Commission of Appeals deals well with this subject in saying: 'No excess provision is made in the lease contract herein for operation or further development in the event of the discovery of minerals in paying quantities. The evident intent of the parties in the execution of the instrument being the production of such minerals, possible only through operation and development, the obligation to operate with reasonable diligence and to reasonably develop the land, will be implied in order to effectuate this intent." Grubb v. McAfee, 109 Texas, 531, 212 S. W., 464.

The rule was again applied in Freeport Sulphur Company v. American Sulphur Royalty Company of Texas, 117 Texas, 454, 6 S. W. (2d) 1039. Able counsel for plaintiff in error contended in that case that "The contract and conveyance under which plaintiff in error holds having expressly provided for the building and putting in operation of a plant of one unit, of the kind described, and thus clearly evidencing the intention of the parties as to the matter of development of the lands for

sulphur, this excludes the idea of any additional covenant relating to the matter of development not expressly written in the contract, and no general covenant for the development of the land in good faith and with reasonable diligence will be implied." Rejecting the contention, the opinion of Mr. Justice Pierson states:

"The language is clear that the Sulphur Company should erect on the property a complete plant of one unit and put it in operation in accordance with the process used in the Union Sulphur Works in Louisiana. * * * It is our conclusion that this provision that a complete plant of one unit should be erected and put in operation does carry a very necessary implication for continued operation of said plant for the purpose of the contract regarding royalties to be paid to the Royalty Company. The parties having contracted for development, an implied covenant exists for diligent operation for the best advantage and benefit of both."

In Waggoner Estate v. Sigler Oil Company, 118 Texas, 517, 19 S. W. (2d) 79, the court declared that repeated decisions must be regarded as having established that: "Where a mining lease provided for oil or gas royalties and failed to define the lessee's duty as regards development after discovery of paying oil or gas, the law implied the obligation from the lessee to continue the development and production of oil or gas with reasonable diligence."

The Texas rule fully accords with that deduced from the decisions by Mr. Merrill, when he says:

"So it is said that the terms of the lease as to royalty payments, gas rentals, etc., show an intention of the parties that the wells, if any, shall be operated and therefore furnish a basis for the implication. Since the lessor's chief return is to be secured from rents and royalties which are made dependent upon operation, the lease is said to imply that, if oil or gas is found, the wells will be operated and the product sold." Merrill's Covenants Implied in Oil & Gas Leases, pp. 151, 152.

Section nine was manifestly designed to provide a forfeiture of the assignment for breach by the assignee of any covenant of the assignment, express or implied. It distinctly stipulates for "forfeiture of this assignment to the first party," for failure by the second party "to fulfill *any* of the covenants of this agreement." An implied covenant is within the meaning of "any covenant."

We decided in Grubb v. McAfee, supra, and Waggoner Estate v. Sigler Oil Company, supra, that breach of an implied

covenant in a mineral lease ordinarily furnishes no ground for the lease's forfeiture, where such breach was not expressly made a ground of forfeiture under the terms of the lease. Here we have a contract explicitly stipulating for forfeiture for breach of *any* covenant.

In the case of Brewster v. Lanyon Zinc Co., 140 Fed., 801, in an opinion by Judge Van DeVanter, it is said: "The covenants of the leasee are introduced into the lease by the statement that the grant is made 'on the following terms' and are followed by the stipulation that the lessee's failure to comply with 'any of the above conditions' shall render the lease null and void. These provisions make it plain that it was the intention of the parties to make the covenants of the lessee conditions as well as covenants and to reserve to the lessor the right to avoid the lease for the breach of any of them." In an earlier portion of the opinion, it is held: "Whatever is implied in a contract is as effectual as what is expressed. Implication is but another name for intention."

In the case before us the parties plainly intended and stipulated for a forfeiture of this assignment for breach of *any* of the assignee's covenants. Having breached an express covenant, as we construe its meaning, and a covenant which would be implied if not expressed, with reference to marketing gas in paying quantities from the leased premises with reasonable diligence, the rights of the assignee were properly adjudged forfeited by the district court. It is therefore ordered that the judgment of the Court of Civil Appeals be reversed and that of the district court affirmed.