**PHILLIPS PETROLEUM CO. v. TAYLOR et al.**

No. 9421.

Circuit Court of Appeals, Fifth Circuit.

Nov. 29, 1940.

Rehearing Denied Jan. 14, 1941.

See 116 F.2d 994.

T. L. Dyer, of Austin, Tex., for appellant.

---

[1] United States v. Fleisher Engineering & Construction Co., 107 F.2d 925.

[2] United States v. Bass, 111 F.2d 965.

Fred B. Wagner, of Brownsville, Tex., and Howell Ward, of Corpus Christi, Tex., for appellees.

Before FOSTER, HOLMES, and Mc-CORD, Circuit Judges.

HOLMES, Circuit Judge.

Mrs. Volney W. Taylor and the Sabine Royalty Corporation each owned 1/64 of the minerals reserved, when a mineral lease was executed, under 37½ acres of land in Hidalgo County, Texas. J. R. Gray owned 14/64 of the minerals which were reserved by him under an assignment to the Phillips Petroleum Company of the mineral lease. On adjacent property which was under lease to Harrison and Danvers, two producing oil wells were drilled which were 230 and 250 feet, respectively, from the dividing line between the properties. Appellees, who were plaintiffs below, sued the appellant for breach of an implied covenant under the lease to protect the lessors from drainage of oil and gas and to drill and capture the oil thereunder. Damages were asked in the sum of $20,500, and the jury gave judgment for $4,000, from which the lessor appealed.

In Texas, the lessee of an ordinary oil and gas lease impliedly covenants to protect the premises against drainage by drilling offset wells. Grubb v. McAfee, 109 Tex. 527, 212 S.W. 464; Texas Co. v. Ramsower, Tex.Com.App., 7 S.W.2d 872. The assignor of a mineral lease who retains an interest therein is also granted the protection of the implied covenant. American Sulphur Royalty Co. v. Freeport Sulphur Co., Tex.Civ.App., 276 S.W. 448; Freeport Sulphur Co. v. American Sulphur Royalty Co., 117 Tex. 439, 6 S.W.2d 1039, 60 A.L.R. 890. The Phillips Petroleum Company refused to drill any offset wells on the property, and also declined to surrender its lease to permit others to drill the wells. It denies that it breached its implied covenant in so doing, claiming that any offset wells would not have produced in a quantity sufficient to pay the expenses attendant upon the drilling; that, for this reason, no reasonably prudent operator would have drilled the wells.

The record is replete with evidence concerning the volume of oil produced by the Harrison and Danvers wells, the amount and value of the drainage from under appellees' land, and the cost of drilling and operating offset wells. Appellee Gray,

who had been scouting wells and dealing in oil and gas leases for several years, testified that the Guerra wells, which were the two wells on the Harrison and Danvers lease, drained oil from under appellees' property; that, in his opinion, if offset wells had been drilled at the time the Guerra wells were brought in, such offset wells would have produced oil in sufficient quantities to pay the cost of drilling and operation and to return a profit; and that a reasonably prudent operator would have drilled offset wells. M. E. Morton, who for fifteen years had been an independent contract driller of oil wells, gave substantially identical testimony, and further testified that he was ready and willing to undertake the risk of drilling the wells, but was prevented therefrom by appellant's refusal to surrender its lease. Plaintiffs below also introduced evidence by disinterested witnesses to show the amount and value of the oil captured from the Guerra wells.

The Phillips Petroleum Company met this evidence by showing by several witnesses that, although some oil was drained from its leased premises by the Guerra wells, the oil to be captured by drilling offset wells was not sufficient in quantity and value to pay the expenses of drilling; that reasonably prudent operators would not have drilled them.

It is not necessary, for the purposes of this opinion, to detail more of the abundant evidence adduced at this trial. We have narrated enough to show clearly the conflicting nature of the testimony on the material issues in the case. The ultimate questions were largely answerable only by inferences from the uncontradicted facts. Conflicting inferences might fairly and reasonably have been drawn by different men. The opinion evidence concerned matters about which reasonable men might differ. In such circumstances, submission of the case to the jury was proper, and its verdict must stand.

Appellant also contends that the court lacked jurisdiction of the cause, at least as to Mrs. Taylor and the Sabine Royalty Co., because each of them failed to allege an amount in controversy within the jurisdiction of the trial court. It is argued that Mrs. Taylor owned 1/64 of the total oil, Sabine Royalty Co. 1/64, and Gray 14/64; that the total owned by them was 16/64, on which they placed a value of $20,500; that, by the plaintiffs' own cal-

culations, the interests of Mrs. Taylor and Sabine Royalty Co. each amounted to approximately $1,280 only; that each plaintiff sued for, on account of, and in respect to, his or her undivided interest only, and was joined with the other plaintiffs for convenience.[1]

■ We have reached the contrary conclusion. We think that this case involves several plaintiffs uniting to enforce a single title or right in which they have a common and undivided interest against the defendant. Such interests may be aggregated to make up the jurisdictional amount.[2] The interest of each of the plaintiffs was derived from the same instrument, the assigned mineral lease, and the liability of the defendant, too, was based solely upon it. The uncaptured produce from the mineral lease, recoverable only through the implied covenant, constituted the sole interest of all the plaintiffs; and the concern of the defendant in this suit was not to avoid any separate demand of the plaintiffs, but to escape the liability common to all. The demand was for a lump sum. The appellant was interested in the amount of that sum, and not the division to be made of it between the opposing parties.[3]

There is no real difference between the case at bar and the leading case of Troy Bank v. Whitehead & Co., 222 U.S. 39, 32 S.Ct. 9, 56 L.Ed. 81, which was a suit by two plaintiffs to enforce a vendor's lien. Each had bought one of two purchase-money notes in which a purchase-money lien had been retained. Justice Van Devanter held that, though the claims on the notes were separate and distinct, the claim under the vendor's lien was single and undivided, and was the common security for both. Similarly in this case, though the respective fractional interests were distinct, the implied covenant was the common and undivided interest

of all, and their common security for the enforcement of their rights under the lease.[4]

The total amount sued for by the plaintiffs was above the minimum required for federal jurisdiction, and the other requisite elements were present. The trial court committed no error in assuming jurisdiction, and its judgment is

Affirmed.

---

[1] Gibson v. Shufeldt, 122 U.S. 27, 7 S.Ct. 1066, 30 L.Ed. 1083; Wheless v. St. Louis, 180 U.S. 379, 21 S.Ct. 402, 45 L.Ed. 583; Rogers v. Hennepin County, 239 U.S. 621, 36 S.Ct. 217, 60 L.Ed. 469; Scott v. Frazier, 253 U.S. 243, 40 S.Ct. 503, 64 L.Ed. 883.

[2] Clay v. Field, 138 U.S. 464, 11 S.Ct. 419, 34 L.Ed. 1044; Pinel v. Pinel, 240 U.S. 594, 36 S.Ct. 416, 60 L.Ed. 817; Dobie on Federal Procedure, p. 158, 159; Williams' Federal Practice, p. 123–128.

[3] Davies v. Corbin, 112 U.S. 36, 5 S.Ct. 4, 28 L.Ed. 627.

[4] Cf. Shields v. Thomas, 17 How. 3, 15 L.Ed. 93; The Connemara, 103 U.S. 754, 26 L.Ed. 322; Davies v. Corbin, 112 U.S. 36, 5 S.Ct. 4, 28 L.Ed. 627; Gibson v. Shufeldt, 122 U.S. 27, 7 S.Ct. 1066, 30 L.Ed. 1083; New Orleans Pacific Ry. Co. v. Parker, 143 U.S. 42, 12 S.Ct. 364, 36 L.Ed. 66; Davis v. Schwartz, 155 U.S. 631, 15 S.Ct. 237, 39 L.Ed. 289; Texas & Pacific Ry. Co. v. Gentry, 163 U.S. 353, 16 S.Ct. 1104, 41 L.Ed. 186.