**W. Thomas BOLTON, Appellant,**

v.

**Alton COATS, d/b/a Coats Drilling Company, et al., Appellees.**

**No. 777.**

Court of Civil Appeals of Texas, Tyler.

Sept. 19, 1974.

Rehearing Denied Oct. 24, 1974.

Joseph P. Witherspoon, Austin, Bankhead & Davis, Carthage, Powers & Rose, John E. Powers, Austin, for appellant.

Hamp P. Smead, Jr., Jack B. Strong, Longview, for appellee Hurley Petroleum Corp.

K. Baker, Crawford Parker, Jr., Carthage, Shank, Irwin, Conant, Williamson & ·Grevelle, Ralph B. Shank, Dallas, for appellees Alton Coats, Olin Mathieson Chemical Corp. and Humble Gas Transmission Co.

MOORE, Justice.

This is an appeal from a summary judgment. W. Thomas Bolton, plaintiff (appellant herein), filed suit in the District Court of Panola County, Texas, on May 27, 1964, seeking a recovery of damages against defendants, Alton Coats, Olin Mathieson Chemical Corporation (Mathieson), Humble Gas Transmission Company (Humble), Hurley Petroleum Corporation (Hurley), Tennessee Gas Transmission Company (Tennessee), and Champlin Oil & Refining Company (Champlin). As grounds for a cause of action, Bolton alleged that he was the owner of a large

number of oil and gas leases covering a large tract of land in Panola County, Texas; that he assigned the working interest in leases to Coats and Mathieson in consideration of their agreement to drill a test well on the leases, reserving to himself an overriding royalty interest in the leases; that on May 19, 1954, Coats and Mathieson completed the drilling of a well known as the No. 1 Cornelius Evans in which they discovered three separate and distinct productive strata or formations, to-wit: (1) the Lower Petit formation, (2) the upper section of the Travis Peak formation known as the Sabine sand, and (3) the Lower section of the Travis Peak formation known as the Burnett sand; that the defendants have at all times produced gas from the Lower Petit and the Sabine sand in the Travis Peak and crude oil from the Burnett sand in the Travis Peak; that in drilling the No. 1 Cornelius Evans, Coats and Mathieson discovered the oil bearing stratum in the Burnett sand of the Travis Peak formation, but fraudulently kept such information from plaintiff; that the other defendants either knew of the fraud or benefited from it; that despite the fact that defendants Coats and Mathieson knew that the well produced oil from the Burnett sand of the Travis Peak formation, they falsely and fraudulently reported to the Railroad Commission that the well had been completed as a gas well only; that as a result the Railroad Commission classified the well as a gas well only; that on November 24, 1960, the Railroad Commission again ruled in formal conference on the basis of false statements before it that the Evans well should continue to be classified as a gas well; that all the evidence supplied by him to the Railroad Commission indicated that the Burnett sand was productive of oil in paying quantities; that despite such evidence defendants failed to obtain, or seek, the proper well classification but sought to prevent it being classified as an oil well. Plaintiff further alleged that all acts of the Railroad Commission from the beginning of the chain of events are and were annuled because they were obtained by defendants' fraud, insofar as plaintiff's rights are concerned; that after bringing in the ostensible gas well, Coats and Mathieson invoked a contractual provision empowering them to form a gas production unit from part of the leases assigned to them by the plaintiff; that in forming the gas production unit, Coats and Mathieson designated, by a recorded instrument, 637.70 acres described by metes and bounds, to be a gas production unit—the Alton Coats, et al "F" Unit (Mitchell). Bolton alleged that in addition to the gas being produced from the Evans well from the Lower Petit formation and the Sabine sand in the Travis Peak, the Evans well was capable of producing crude oil from the Burnett sand of the Travis Peak in paying quantities; that defendants wrongfully caused the Railroad Commission to classify the Travis Peak formation as a gas reservoir rather than as a dual reservoir of gas in the Sabine sand and crude oil in the Burnett sand; that since defendants wrongfully caused the gas classification, they are not entitled to rely upon the Railroad Commission's order to shield them from liability for their failure to develop and protect from drainage the oil-bearing stratum lying under the leases in the Burnett sand, and that by reason of defendants' wrongful conduct he suffered a loss of income which he would have received from the production of oil. He prayed for compensatory and exemplary damages for defendants' failure to reasonably develop the leases for the production of oil in the Burnett sand and for defendants' failure to prevent drainage of oil from the Burnett sand; for compensatory and exemplary damages for fraud in falsely representing to him and the Railroad Commission that the Evans well was not capable of producing oil in paying quantities and for an accounting. Plaintiff also sought to have a receiver appointed for the purpose of properly developing the leases for oil by the drilling of additional oil wells in the event the court found the Travis Peak to be an oil bearing reservoir. Defendants answered with a general deni-

al, a plea of not guilty, and set up numerous affirmative defenses.

The matter came on for hearing before the trial court upon a motion for summary judgment filed by each of the above named defendants, except Champlin and Tennessee, under Rule 166-A, Texas Rules of Civil Procedure. In their motion for summary judgment defendants alleged that based upon the pleadings, exhibits, affidavits, depositions and other summary judgment proof on file, there existed no genuine issue of material fact to be determined by the court or jury and that the defendants were entitled to a summary judgment as a matter of law. Among other defenses, defendants alleged in their motion for summary judgment that the Panola County suit for damages against defendants for failure to produce oil from the Evans well and failure to properly develop the leases for oil, amounted to a collateral attack on the Railroad Commission's order finding that the Travis Peak formation in the Bethany field, where the Evans well was situated, constituted a gas reservoir. Defendants alleged that so long as the Railroad Commission's order remained in effect classifying the Evans well as a gas well, plaintiff's suit in Panola County seeking to establish that the Burnett sand in the Travis Peak is an oil reservoir is nothing more than a collateral attack upon the Railroad Commission's finding that it is a gas well and therefore defendants are entitled to a judgment as a matter of law. After a hearing on the motion, the trial court entered an order granting a summary judgment in favor of Coats, Mathieson, Humble and Hurley, the movants, and by the same order dismissed plaintiff's cause of action against defendants Champlin and Tennessee "without prejudice." Plaintiff, W. Thomas Bolton, duly perfected this appeal. The parties will hereinafter be referred to as they appeared in the trial court.

We hold that plaintiff's suit in the District Court of Panola County amounts to a collateral attack on an order of the Texas Railroad Commission and accordingly affirm the judgment rendered by the trial court.

Before discussing the issues involved, we hasten to point out that the various causes of action asserted by plaintiff relates only to defendants' failure to produce oil from the Burnett sand in the Travis Peak formation. Defendants' failure to develop the leases for gas is not in issue. This is made abundantly clear by admissions contained in both of plaintiff's pleadings and in his brief from which we quote: (1) "The causes of action brought by appellant are concerned *only with the oil* that lay or remains under the leases. They are not concerned with gas production.", (2) "The appellant does not base any claim of right on the production vel non of *natural gas* from the leases." (Emphasis supplied.), (3) Appellant "concedes that * * * the formation of a gas production unit would have been authorized.", (4) "This lawsuit is about the oil that was not produced.", and (5) "The validity of the unit for *gas* production is not under attack in this case." It is without dispute that the Evans well is situated in the Bethany field in Panola County. The field rules established by the Railroad Commission for that field prohibit the drilling of more than one well in a gas reservoir on each 640 acres (plus 10% tolerance). Plaintiff admits he signed a division order in connection with the production of gas from the Alton Coast, et al "F" Unit (Mitchell) and has accepted gas royalty payments from defendants since the time the Evans well commenced production.

By his first point of error plaintiff contends the court erred in rendering a summary judgment because defendants failed to discharge their negative burden of showing, as a matter of law, that plaintiff had no cause of action against them. Plaintiff argues that the summary judgment proof raises fact issues with regard to whether the Burnett sand was an oil bearing formation and whether the Burnett sand was, in fact, capable of producing oil

in paying quantities and also whether defendants were guilty of fraud in causing the Railroad Commission to rule that the Travis Peak formation was only a gas reservoir. In reply defendants urge, among other things, that the plaintiff's suit in Panola County seeking to obtain a finding that the Evans well is, and always has been, capable of producing oil from the Burnett sand of the Travis Peak, constitutes a collateral attack on the ruling of the Texas Railroad Commission classifying the Travis Peak formation as a gas reservoir. They contend that plaintiff cannot establish a cause of action in Panola County imposing a duty on defendants to develop the Travis Peak formation for oil, until such time as the existing order is changed by the Railroad Commission or by the District Court of Travis County as provided by Article 6049c, Sec. 8, Vernon's Ann. Civ.St. As stated, we sustain defendants' contention.

The legislature has passed regulatory laws controlling the production of oil and gas and has placed the duty upon the Railroad Commission to carry out the details under the provisions of the conservation statute, Article 6004 et seq., Vernon's Ann.Tex.Statutes.

In the interest of conservation, the Railroad Commission "must necessarily determine at the outset, in each instance, whether the wells are oil or gas wells for the purpose of determining the character of regulation to be applied." 43 Tex.Jur.2d, p. 506, sec. 615. In this instance the Railroad Commission determined at the outset that the Evans well was a gas well only, producing only gas from the Travis Peak formation which was a gas reservoir.

Article 6008, Sec. 2, Vernon's Ann.Tex. Statutes, sets forth the guidelines which the Texas Railroad Commission is required to follow in determining whether a well is an "oil" well or "gas" well as follows:

"(d) The term 'gas well' is any well (a) which produces natural gas not associated or blended with crude petroleum oil at the time of production, or (b) which produces more than one hundred thousand (100,000) cubic feet of natural gas to each barrel of crude petroleum oil from the same producing horizon, or (c) which produces natural gas from a formation or producing horizon productive of gas only encountered in a well bore through which crude petroleum oil also is produced through the inside of another string of casing.

"(e) The term 'oil well' is any well which produces one (1) barrel or more of crude petroleum oil to each one hundred thousand (100,000) cubic feet of natural gas."

It is well settled that under the general provisions of the law the Railroad Commission acts in a quasi-judicial capacity. Magnolia Petroleum Co. v. Railroad Commission, 128 Tex. 189, 96 S.W.2d 273 (1936). It is likewise well settled that an order of the Railroad Commission, regular on its face, is presumed to be valid. Article 6049c, Sec. 8, provides that any party not satisfied with any rule, regulation or order made by the Commission "shall have the right to file suit in a Court of competent jurisdiction in Travis County, Texas, and not elsewhere, * * *." In such proceedings in Travis County, the presumption of validity is only prima facie and may be rebutted. But in any other proceeding or forum the attack is collateral and the presumption of validity is irrebuttable. Alpha Pet. Co. v. Terrell, 122 Tex. 257, 59 S.W.2d 364, 372; Trapp v. Atlantic Refining Co., 170 S.W.2d 506 (Tex.Civ.App., 1943, err. ref'd); 43 Tex.Jur.2d p. 593, sec. 658.

It is without dispute that the Railroad Commission has always classified the Travis Peak formation in the Bethany field under the Evans well as a gas reservoir irrespective of whether the production was obtained from the Sabine sand or the Burnett sand or both. In 1960 and in 1962, plaintiff requested the Railroad Commission to change the classification of the Evans well. He produced evidence before the commission and argued that while the Commission had properly classified the Lower Petit formation and the Sabine sand in the Travis Peak as gas reservoirs, the

order classifying the entire Travis Peak as a gas reservoir was wrong and that the Commission should have reclassified the Burnett sand of the Travis Peak as an oil reservoir and should have established a daily allowable for oil. The Railroad Commission refused his request and ruled that the entire Travis Peak formation under the Evans well would continue to be classified as a gas reservoir irrespective of whether production was obtained from the Sabine or Burnett sands. This ruling, as we view it, is tantamount to a finding that the Burnett sand in the Travis Peak was not capable of producing more than one barrel of oil to every 100,000 feet of gas. It is without dispute that no suit has ever been filed by plaintiff in the District Court of Travis County seeking to overturn the order based upon proof that the Burnett sand of the Travis Peak is, in fact, an oil bearing reservoir.

■ One of the essential elements of proof in plaintiff's Panola County suit for damages was that the Burnett sand of the Travis Peak, was in fact, an oil bearing reservoir. While plaintiff's summary judgment proof is sufficient to raise an issue thereon, any such proof and any such finding by the District Court of Panola County would be in direct conflict with the finding of the Railroad Commission. To permit plaintiff to maintain this suit establishing a duty on the part of defendants to respond in damages or produce oil from the Travis Peak reservoir contrary to the Railroad Commission's order, would permit him to circumvent the conservation statutes. Armstrong v. High Crest Oils, Inc., 520 P.2d 1081 (Montana Sup.1974). The Railroad Commission's order stands irrebuttable in every proceeding and in every forum except the District Court of Travis County. Trapp v. Atlantic Refining Co., supra. Any attack on the Commission's orders in any other proceeding or forum, other than the one provided by statute, constitutes a collateral attack on the order. Any other rule would lead to interminable confusion. 43 Tex.Jur.2d, p. 593, sec. 658. Since the undisputed facts demonstrate as

a matter of law that the Panola County suit amounts to a collateral attack on the order of the Commission, plaintiff cannot establish a cause of action against defendants in Panola County. It follows that the trial court properly disposed of the plaintiff's suit by summary judgment.

■ Plaintiff vigorously maintains that the present suit in Panola County does not amount to an attack on the order of the Railroad Commission, collateral or otherwise. He argues that since there is evidence raising the issue of whether defendants were guilty of fraud in procuring the Railroad Commission's order, defendants are estopped from relying on the order as a shield of liability. Therefore, he argues that defendants are estopped to defend themselves on the ground that his Panola County suit amounts to a collateral attack on the order. He maintains that upon establishing the issue of fraud in the Panola County suit he would then be able to establish a breach of duty on the part of defendants to develop the Travis Peak reservoir for oil, irrespective of the Railroad Commission's finding that the Travis Peak was a gas reservoir only. We find the proposition to be without merit. While we recognize that in some cases proof of the type of fraud known as extrinsic fraud is held to be sufficient to vitiate an administrative order such as this, neither the pleadings nor the proof shows this to be a case of extrinsic fraud. The fraud alleged here is the making of false statements to the Railroad Commission. This type of fraud constitutes intrinsic fraud and for that reason would not be sufficient to vitiate the quasi-judicial ruling of the Commission. 2 Am.Jur.2d, sec. 492, p. 298. Where an administrative agency acts in a judicial capacity on matters within its jurisdiction, as here, the decision made by the agency may not be attacked in a collateral proceeding on the ground of fraud. 2 Am.Jur.2d, sec. 492. This is especially true where, as here, a method of direct review is available. Thus, we do not believe extrinsic fraud can be used as a vehicle to

circumvent the order of the Railroad Commission.

The case of Pan American Petroleum Corporation v. Hardy, 370 S.W.2d 904 (Tex.Civ.App., Waco, 1963, writ ref., n. r. e.) is not in point in that the case is distinguishable on both the facts and the law.

■ By the second point, plaintiff contends the trial court committed reversible error in summarily dismissing "without prejudice" defendants Champlin and Tennessee. The point is without merit and is overruled. Plaintiff's cause of action against these two defendants is derivative in that a recovery against them is made to depend on plaintiff's establishing a cause of action against the other defendants. Since it has been determined that the other defendants are entitled to a summary judgment, we fail to see how the dismissal could have resulted in harm to plaintiff. He makes no attempt to demonstrate how or why the dismissal was harmful. Under the circumstances the error, if any, is harmless. Rule 434, Texas Rules of Civil Procedure.

The judgment of the trial court is affirmed.