W. Thomas BOLTON, Petitioner,

v.

Alton COATS et al., Respondents.

No. B–4951.

Supreme Court of Texas.

Nov. 26, 1975.

Rehearing Denied Jan. 7, 1976.

Bankhead & Davis, Carthage, Powers & Rose, John E. Powers, Austin, Joseph P. Witherspoon, Austin, for petitioner.

Shank, Irwin, Conant, Williamson & Grevelle, Ralph Shank, Dallas, Cantey, Hanger, Gooch, Cravens & Munn, M. H. Carter Burdette, Fort Worth, Long, Strong, Jackson & Parker, Crawford Parker, Jr., Carthage, Baker & Botts, William C. Slusser, Houston, LaSalle & Baker, K. Baker, Carthage, Jack B. Strong, Longview, Clyde Brown, Monroe, La., for respondents.

DANIEL, Justice.

This is an appeal from a summary judgment against the plaintiff, W. Thomas Bolton, the assignor of certain oil and gas leases, in a suit which he filed for breach of contract and damages against his assignees. Bolton, who had reserved an overriding royalty on the assigned leases, alleged that the defendant assignee, Alton Coats, and others holding under Coats, were liable in damages for failure to perform express and implied covenants of the assignment. The defendant respondents will be referred to as "Coats" or "assignees" unless otherwise noted.

On one of the leases Coats drilled a well known as the No. 1 Cornelius Evans, which was classified by the Texas Railroad Commission as a gas well. This lease and the other Bolton leases relevant to this controversy were unitized, as permitted by Bolton's assignment to Coats, to form a gas production unit of 673.70 acres known as the Coats et al. "F" Unit (Mitchell) in what is referred to by Coats as the Bethany Field and by Bolton as the Bethany and the Carthage Fields in Panola County. Bolton alleges that the Evans well penetrated three separate productive sands: (1) the Lower Petit, (2) Upper Travis Peak (Sabine sand), and (3) the Lower Travis Peak (Burnett sand).

Bolton's pleadings attack the Railroad Commission's classification of the Evans well as a gas well in the Burnett sand, alleging that in addition to the gas produced from the Lower Petit and Sabine sands, the well was capable of and had actually produced oil in paying quantities from the Burnett sand; that Coats wrongfully concealed this oil production from Bolton and the Commission; that he fraudulently caused the Railroad Commission to classify the Evans well as a gas well in·the Travis Peak formation rather than as a dual reservoir of gas in the Sabine sand and crude oil in the Burnett sand; and that because of such wrongful conduct Bolton suffered a loss of income which he would have received from a proper classification and production of oil from the Evans well.

The court of civil appeals affirmed the trial court's summary judgment against Bolton on the grounds that, after seeking and failing to obtain reclassification of the Evans well by the Railroad Commission, he did not appeal the Commission's decision in Travis County as provided by law, and that the present action constitutes an impermissible collateral attack on the Railroad Commission's order. Tex.Civ.App., 514 S.W.2d 482. If the allegations summarized above were all of Bolton's pleaded cause of action we would agree with the conclusion reached by the court of civil appeals. In addition, however, Bolton had other pleadings for damages which are separate from his attack upon the Railroad Commission's order and on which the defendants did not show the absence of a genuine issue as to material facts or that they were otherwise entitled to summary judgment as a matter of law. Therefore, we reverse the judgments of the courts below and remand the cause for trial on the allegations hereinafter discussed.

 Among such other pleadings are allegations by Bolton that Coats actually produced from the Evans well large quantities of crude oil (at least 25,532 barrels up to 1960) and distillate on which Bolton has not been paid the overriding royalty to which he is entitled under his assignment. In this connection he also seeks an accounting. A lessee or assignee who produces oil contrary to law or commission order is liable to the royalty owner for his share of what is actually, although illegally, produced. *Ortiz Oil Co. v. Geyer*, 138 Tex. 373, 159 S.W.2d 494 (1942). The Railroad Commission's classification of the well as a gas well in the Travis Peak formation (including the Burnett sand) means that crude oil in excess of one barrel per 100,000 cubic feet of gas *should not* be produced therefrom.[1] It

does not conclusively establish that a greater amount of oil *was not* in fact produced. Therefore, the order is not a bar to Bolton's cause of action for his share of any oil which actually was produced and for which he has not been paid, nor to his plea for an accounting.

By other allegations Bolton asserted that much of the Burnett sand under the 673 acres was an oil bearing formation and that the oil was being drained therefrom by oil wells on adjacent lands, some of which wells were being operated by Coats and other assignees holding under Coats, thus depriving Bolton of the value of his overriding royalty on the oil being drained away; that in addition to field rules for gas wells limiting the drilling of one gas well on each 640 acres (plus 10% tolerance), there are separate field rules applicable to oil wells which permit the drilling of one well for oil on each 80 acres (plus 10% tolerance); that a prudent operator would have sought a permit and profitably drilled at least five oil wells to the Burnett oil sand on the 673 acres; and that Coats breached his implied covenant to protect the leasehold from drainage.

 Unless the assignment provides to the contrary, the assignee of an oil and gas lease impliedly covenants to protect the premises against drainage when the assignor reserves an overriding royalty. *Phillips Petroleum Co. v. Taylor*, 115 F.2d 726 (5th Cir. 1940). The analogy between implied covenants in mineral leases and those in mineral lease assignments is demonstrated in *Cole Petroleum Co. v. United States Gas and Oil Co.*, 121 Tex. 59, 41 S.W.2d 414 (1931). See also Merrill, *Covenants Implied In Oil and Gas Leases*, (2nd Ed., 1940) 416–418, and 3 Summers, *The Law of Oil and*

1. Railroad Commission classification of a completed well as a gas well or an oil well relates to the gas-oil ratio of past production or tests of the well. Article 6008, Sec. 2(d)(b), V.A.T.S., defines the term "gas well" as any well "which produces more than one hundred thousand (100,000) cubic feet of natural gas to each barrel of crude petroleum oil from the same producing horizon." Art. 6008, Sec. 2(e) reads: "The term 'oil well' is any well which produces one (1) barrel or more of crude petroleum oil to each one hundred thousand (100,000) cubic feet of natural gas."

*Gas,* (2nd Ed., 1958) 652–659. Bolton is entitled to the benefit of the implied covenant under his assignments if his allegations are found to be true concerning drainage and the protection therefrom which would have been afforded by a reasonably prudent operator under the same or similar circumstances. Coats and the other defendants did not negate these allegations in the manner required for summary judgment under Rule 166–A.[2] Although unnecessary under the circumstances, Bolton offered depositions and affidavits which clearly raise fact issues concerning the allegations. The court of civil appeals recognized that a fact issue was raised as to whether "the Burnett sand of the Travis Peak, was in fact, an oil bearing reservoir," but it disposed of the issue as follows:

". . . While plaintiff's summary judgment proof is sufficient to raise an issue thereon, any such proof and any such finding by the District Court of Panola County would be in direct conflict with the finding of the Railroad Commission."

The "finding" referred to by the court of civil appeals was inferred from the Railroad Commission's refusal to reclassify the Burnett sand of the Travis Peak formation as an oil reservoir under the Evans well. This classification, although limited to the Evans well, was viewed by the court of civil appeals as "tantamount to a finding that the Burnett sand in the Travis Peak was not capable of producing more than one barrel of oil to every 100,000 feet of gas" throughout the entire 673 acres. We disagree. The order and permissible inferences therefrom are not so broad or conclusive. The Evans well is located in the southern half of the 673 acres. The record indicates that there are oil wells producing from the Burnett sand on tracts adjacent to the 673 acres on the north and northwest. Bolton's affidavits and depositions of experts assert that much of the Burnett sand under the 673 acres is laden with crude oil; that the Railroad Commission has established applicable field rules for oil production from this sand on a spacing of one well to 80 acres; that the oil wells drilled to this sand on adjacent tracts to the north and northwest are draining substantial quantities of oil from beneath the 673 acres; and that a reasonably prudent operator could and would seek permits and profitably drill wells to the Burnett oil sand on the 673 acres.

■ We do not consider the Railroad Commission's order classifying the Evans well as a gas well in the Burnett sand as tantamount to a finding that there are no separate oil productive horizons or segments of the Burnett sand anywhere underneath the Bolton-Mitchell 673 acres. In no event does the order shield Coats and his assignees from damages due to drainage of oil from the Burnett sand by wells on adjacent leases if it is found that a reasonably prudent operator would have sought a permit to drill protective off-set wells on the 673 acres.

■ It has been recognized that numerous "fields" (one for each physically separate productive stratum) can lie under a single well, lease, or unit. *Benz-Stoddard v. Aluminum Company of America,* 368 S.W.2d 94 (Tex.1963); *Railroad Commission v. Shell Oil Company,* 380 S.W.2d 556 (Tex. 1964). Article 6008 recognizes the possibility of a gas well and an oil well producing from different horizons of the same sand at different subsurface locations. Thus, it is entirely possible for the Evans well in the Burnett sand to continue to qualify for classification as a gas well while a well drilled on the north 80 acres of the 673 acres might be classified as an oil well. See Sec. 2(d), Article 6008. This explains the possibility of separate field rules and spacings for oil wells and gas wells being applicable to the 673 acres as alleged by Bolton.

---

2. All references to Rules are to Texas Rules of Civil Procedure, and statutory references are to Vernon's Annotated Texas Civil Statutes.

Whatever may be the result when the trier of facts hears all of the evidence of the parties with reference to plaintiff Bolton's allegations and the defendants' answers, we hold that a summary judgment was improper on the pleadings, affidavits and depositions which were before the trial court. The movants for a summary judgment have the burden under Rule 166–A of showing that there is no genuine issue as to any material fact and that they are entitled to judgment as a matter of law. *Adam Dante Corporation v. Sharpe*, 483 S.W.2d 452 (Tex.1972); *Gibbs v. General Motors Corporation*, 450 S.W.2d 827 (Tex.1970). As heretofore indicated, the defendant movants in this case made no such showing with respect to plaintiff Bolton's allegations as to payments due for oil actually produced and damages due on account of failure to protect against drainage.

Accordingly, the judgments of the courts below are reversed and the cause is remanded for trial in accordance with this opinion.