WES–TEX LAND COMPANY, Appellant,

v.

James R. SIMMONS, Appellee.

No. 5186.

Court of Civil Appeals of Texas, Eastland.

May 18, 1978.

Rehearing Denied June 8, 1978.

Michael F. Linz, Spinuzzi, Linz & Associates, P.C., Dallas, for appellant.

J. R. Black, Scarborough, Black, Tarpley & Scarborough, Abilene, for appellee.

BRADBURY, Justice.

This case seeks cancellation of an oil and gas lease assignment and damages. James R. Simmons was lessee of an oil and gas lease dated May 21, 1975, with a three-year primary term. On July 15, 1975, Simmons assigned the lease to Wes-Tex Land Company retaining an override of 1/16ths of 8/8ths of production. Wes-Tex had not developed the lease and indicated it did not plan to. In a nonjury trial, the court awarded Simmons $5,000 as damages and decreed cancellation of the assignment. We affirm as to damages and reverse and remand as to cancellation.

Simmons contends that as assignor he was damaged because of Wes-Tex's failure

to drill an offset well which resulted in drainage and was entitled to cancellation of the assignment because of such failure. Wes-Tex argues that the lease provides that lessee shall have ninety days after ultimate judicial ascertainment of the existence of an obligation for reasonable development within which to commence the drilling of a well. It contends this provision provides the remedy to protect against drainage from offset wells. The relevant provisions of the lease are found in Paragraphs 5 and 8.[1] In *Stanolind Oil & Gas Co. v. Christian*, 83 S.W.2d 408 (Tex.Civ.App.—Texarkana 1935, writ ref'd), the court stated:

" . . . It is true that drilling an offset well is in a sense developing the property. But the implied covenant to drill offset wells for protection of the property from drainage is a distinct obligation from the obligation imposed by the implied covenant to develop the property. They are two separate and distinct covenants. The express stipulation against, or the full performance of, the obligation of the lessee to develop the property will not relieve the obligation to prevent drainage. . . . "

See *Foster v. Atlantic Refining Company*, 329 F.2d 485 (5th Cir. 1964).

 The relief Simmons seeks regarding drainage is not covered by Paragraph 8 of the lease which permits ninety days for development after there is an ultimate judicial ascertainment calling for reasonable development. Paragraph 8 applies to failure to reasonably develop and is not a remedy for loss by drainage. The remedy of an assignor against an assignee of an oil lease where the assignee fails to protect the lease against drainage is damages measured by the amount of royalties actually lost. *Texas Pacific Coal & Oil Co. v. Barker*, 117 Tex. 418, 6 S.W.2d 1031 (Tex.1928); *Freeport Sulphur Co. v. American Sulphur Royalty Co.*, 117 Tex. 439, 6 S.W.2d 1039 (Tex.1928), 60 A.L.R. 890. Where there is no express agreement between the assignor and the assignee, there is an implied covenant on the part of the assignee to protect the premises against drainage when there is an overriding royalty reserved for assignor. Our Supreme Court in *Bolton v. Coats*, 533 S.W.2d 914 (Tex.1975) stated:

"Unless the assignment provides to the contrary, the assignee of an oil and gas lease impliedly covenants to protect the premises against drainage when the assignor reserves an overriding royalty. *Phillips Petroleum Co. v. Taylor*, 115 F.2d 726 (5th Cir. 1940). The analogy between implied covenants in mineral leases and those in mineral lease assignments is demonstrated in *Cole Petroleum Co. v. United States Gas and Oil Co.*, 121 Tex. 59, 41 S.W.2d 414 (1931). See also Merrill, Covenants Implied in Oil and Gas Leases, (2d Ed., 1940) 416–418, and 3 Summers, The Law of Oil and Gas, (2d Ed., 1958) 652–659. Bolton is entitled to the benefit of the implied covenant under his assignments if his allegations are found to be true concerning drainage and the protection therefrom which would have been afforded by a reasonably prudent operator under the same or similar circumstances . . . "

See *Phillips Petroleum Co. v. Taylor*, 115 F.2d 726 (5th Cir. 1940).

 The court found there was production on lands northeast, southeast, west,

---

1. "5. . . . In the event a well or wells producing oil or gas in paying quantities should be brought in on adjacent land and within six hundred sixty (660) feet of and draining the leased premises, Lessee agrees to drill such offset wells as a reasonably prudent operator would drill under the same or similar circumstances."

"8. The breach by Lessee of any obligation arising hereunder shall not work a forfeiture or termination of this lease nor cause a termination or reversion of the estate created hereby nor be grounds for cancellation hereof in whole or in part save as herein expressly provided. If the obligation for reasonable development should require the drilling of a well or wells, Lessee shall have ninety (90) days after ultimate judicial ascertainment of the existence of such obligation within which to begin the drilling of a well, and the only penalty for failure to do so shall be the termination of this lease save as to forty (40) acres for each well being worked on and/or being drilled and/or producing oil or gas to be selected by Lessee so that each 40-acre tract will embrace one such well."

south and southwest of the land covered by the lease. The evidence sustains such finding. The trial court found that a well on this lease offsetting the well on the land west would have produced oil in paying quantities and that the offset well on the land to the west has drained oil from the land covered by this lease.

There was an implied covenant on the part of Wes-Tex to protect Simmons against drainage and the court has found that the lease in question suffered drainage from an offset well. The court further found that a well drilled on this lease to protect against such drainage would have been drilled by a prudent operator and would have produced oil in paying quantities, therefore, Simmons was entitled to recover for loss of royalty.

■ As the obligation on the part of Wes-Tex to Simmons to protect against drainage was a covenant and not a condition subsequent Simmons was not entitled to cancellation of the assignment. Loss of royalty is the ordinary remedy and not cancellation. *W. T. Waggoner Estate v. Sigler Oil Co.,* 118 Tex. 509, 19 S.W.2d 27 (1929); *Grubb v. McAfee,* 109 Tex. 527, 212 S.W. 464 (1919); *Christie, Mitchell & Mitchell Co., Inc. v. Howell,* 359 S.W.2d 658 (Tex.Civ. App.—Fort Worth 1962, writ ref. n. r. e.); *Batex Oil Company v. La Brisa Land and Cattle Company,* 352 S.W.2d 769 (Tex.Civ. App.—San Antonio 1961, writ dism'd); H.L.F., XVI Texas L.Rev. 594 (1938).

■ In unusual circumstances, our courts in the exercise of equitable jurisdiction can enter a decree of cancellation. However, such decree should be conditional, that is requiring the lessee to do those things necessary to fulfill his obligation under the implied covenant within the time specified by the court or suffer cancellation. *W. T. Waggoner Estate v. Sigler Oil Co., supra; Grubb v. McAfee, supra; Rendleman v. Barlett,* 21 S.W.2d 58 (Tex.Civ.App.—Austin 1929, writ ref'd); *Burnett v. R. Lacy, Inc.,* 293 S.W.2d 674 (Tex.Civ.App.—Texarkana 1956, writ ref. n. r. e.); Meyers and Williams, The Implied Duty to Explore Further: Recent Texas Developments, 41 Texas L.Rev. 789, at p. 794 (1963). This court in *Scott v. Jackson,* 37 S.W.2d 1068 (Tex. Civ.App.—Eastland 1931, no writ) stated:

"The theory of cancellation for breach of an implied covenant for reasonable exploration and development of the lower strata of oil producing sand, if in fact such strata exist, cannot be upheld. A lease cannot be forfeited for breach of an implied covenant. That question has been set at rest in this state by the decision of our Supreme Court in the case of *W. T. Waggoner Estate v. Sigler Oil Co.,* 118 Tex. 509, 19 S.W.2d 27. As pointed out in that case, a court of equity, in extreme cases, where the remedy at law for damages is inadequate, may enter a conditional decree of cancellation for the failure of lessee to develop with reasonable diligence, but the petition in the instant case did not allege sufficient facts for such a conditional decree, nor was such remedy sought or obtained. In the recent case of *Rendleman v. Barlett* (Tex. Civ.App.) 21 S.W.2d 58 (error refused), a petition was held to be sufficient to support such a decree. By refusing a writ of error in that case we think it may be safely assumed that the Supreme Court regarded that opinion as a correct interpretation of its holding in the *Waggoner* Case. The instant case cannot be affirmed on the ground of breach of implied covenant because, as noted, the pleadings did not seek, nor did the court enter, a conditional decree."

In the instant case, Simmons' pleadings did not seek a conditional decree.

■ Wes-Tex contends that the trial court's award of damages rests on evidence too speculative to support such an award. We disagree. Simmons testified about his background, education and experience as a geologist and operator and developer of oil properties. He testified that he had information about wells surrounding the lease in question, the sand from which they were producing and history and quantity of oil produced. In his opinion, a well drilled on the instant lease would produce in paying quantities and would produce as much as

the offset well to the west on the Jackson lease and perhaps would produce more. Based upon the production figures for the Jackson well, his override for the period he was seeking recovery would have netted him $6,642.47 which was more than the court awarded. The court in its findings of fact found, "that if said well had been drilled it would have produced oil in paying quantities, and the plaintiff would have received income therefrom in an amount of at least $5,000." In our opinion, there was sufficient evidence to support such finding.

In oral argument, Wes-Tex argued that there was no evidence that an offset well was within 660 feet of the lease in question. There is no assignment of error on this point. It is waived.

Judgment of the trial court canceling the assignment is reversed and remanded and affirmed as to the award of damages.